# THE SERVIA.[1]

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 207.    Argued April 12, 13, 1893. — Decided April 24, 1893.

A steam vessel, the N., backed out from her slip in Jersey City, towards the
middle of the Hudson River between Jersey City and New York, prepara-
tory to turning down to go to sea. Another steam vessel, the S., was
going down, above the N., and nearer the New York shore, on her way
to sea. It was customary and necessary for the N. to back out of her
slip to about the middle of the river. The S. knew of such practice of
the N. When the N. had reached the middle of the river she stopped her
engines and the S. assumed she would go ahead, and herself proceeded
without any material change of course, under slow speed, until she got
near enough to observe that the N. was continuing to make sternway at
considerable speed, and might bring herself in the path of the S. Then
the S. stopped her engines, being about 1000 feet away from the N., and
one minute after, upon observing that the N. still continued to make
sternway at a speed which indicated danger of collision, put her engines
at full speed astern and ported. The N., after stopping her engines,
waited two minutes before putting her engines at half speed ahead, and
two minutes more before putting her engines at full speed ahead. The
vessels collided, the N. and the S. both of them making sternway at the
time; *held*, that the N. was in fault and the S. not in fault.

The S. was justified in assuming that the N. would pursue her customary
course and took timely measures to avert a collision.

The statutory steering and sailing rules had little application in the case
and it was rather one of " special circumstances."

IN ADMIRALTY.   The case is stated in the opinion.

*Mr. John E. Parsons,* (with whom was *Mr. Henry Galbraith
Ward* on the brief,) for appellant.

*Mr. Frank D. Sturges,* (with whom was *Mr. Edward L.
Owen* on the brief,) for appellee.

---

[1] The docket title of this case is " Harlich Nichels, Master of the Belgian
Steamship ' Noordland,' Appellant, *vs.* The British Steamship ' Servia,' her
engines, etc., the Cunard Steamship Company, Limited, Claimant."

Mr. Justice Blatchford delivered the opinion of the court.

This is a suit in admiralty, *in rem*, brought in February, 1886, in the District Court of the United States for the Southern District of New York, by Harlich Nichels, master of the Belgian steamship Noordland, of Antwerp, against the British steamship Servia, to recover damages resulting from a collision which took place January 30, 1886, between those two vessels, in the harbor of New York, in the Hudson River, between New York and Jersey City. Both were damaged and a cross-libel was filed by the Servia against the Noordland. The Noordland was backing out, stern foremost, from her berth in a slip in Jersey City, and the Servia had backed out from her slip in the city of New York, and was heading down the Hudson River above the Noordland. Both vessels were going to sea, and had lain in their slips bow in. The libel of the master of the Noordland charges fault in the Servia in that (1) she was not stopped when the Noordland could be easily seen from her; (2) she kept on until she was brought into dangerous proximity to the Noordland; (3) instead of then keeping out of the way of the Noordland, she threw her head to starboard, and thus struck the Noordland on the starboard quarter.

The answer of the Servia charges negligence and fault on the part of the Noordland, in that (1) she did not have competent and vigilant lookouts properly stationed and faithfully attending to their duties; (2) her officers and crew were inattentive; (3) she continued under sternway, thus bringing her down to and upon the Servia, which was as close into the New York shore as it was prudent for her to go; (4) she did not stop her sternway, or start her engines ahead, until immediately before the collision, when it was too late to avoid it; (5) after she had stopped her engines, she wrongfully and improperly started them astern again, thus crowding down to and upon the Servia's rightful course, notwithstanding she had plenty of room between her and New Jersey to have gone ahead, which she was bound to have done, and so have avoided the Servia.

The case was heard by Judge Brown in the District Court, and a decree was entered by that court dismissing the libel of the Noordland, with costs. The opinion of Judge Brown is reported in 30 Fed. Rep. 502. He held that the Servia did all that the law required of her, and was without fault, and that the collision occurred through the unjustifiable delay of the Noordland in starting her engines ahead. The master of the Noordland appealed to the Circuit Court, and that court, held by Judge Wallace, in March, 1889, affirmed the decree of the District Court, and dismissed the libel of the Noordland, with costs of both courts. The libellant has appealed to this court.

The Circuit Court made the following findings of fact:

"1. At about 2.45 P.M., January 30, 1886, a collision took place between the steamships Servia and Noordland, in the Hudson River, at a point 800 to 1000 feet off the New York side, about opposite Cortlandt street. The river at that place is about 4400 feet wide between the lines of the piers.

"2. Both steamships had just left their respective slips, intending to put to sea, the slip of the Servia being above Houston Street, New York city, and the slip of the Noordland being at Jersey City, about opposite the place of collision. It was customary and necessary for the steamers to back out of their respective slips to about the middle of the river, for the purpose of straightening on the courses down the river, and it was frequently the practice of the Noordland to back still nearer to the New York side. Both vessels knew the practice customary with the other when starting for sea. The Servia started from her slip at about 2.15 and the Noordland from hers about 2.30.

"3. The Servia had got turned about and straightened on her course down the river, and was proceeding within a distance of 800 to 1000 feet from the New York shore, and nearer to the New York shore than was customary, and as near as she prudently could, having reference to her own size and the proximity of other vessels, while the Noordland was backing over towards the New York shore, assisted by a tug at her port quarter, preparatory to straightening on her course.

"4. When the Noordland reached about mid-river she stopped her engines and signalled the Servia that she intended to starboard her helm and go ahead. The Servia did not hear the signal, but observed the movements of the Noordland and assumed that she would go ahead in time to leave the Servia an unobstructed course. The Servia proceeded without any material change of course, headed about south by west one-half west, under slow speed, until she got near enough to observe that the Noordland was continuing to make sternway at considerable speed and might bring herself in the path of the Servia; whereupon the Servia stopped her engines, being then about 1000 feet away from the Noordland, and one minute after, upon observing that the Noordland still continued to make sternway at a speed which indicated danger of collision, put her engines at full speed astern and ported her helm.

"5. When the Noordland reached mid-river and stopped her engines she had been backing at a speed of five or six knots an hour, and, after stopping her engines and giving the signal to indicate that she would go ahead she did not go ahead, but waited two minutes longer before putting her engines at half speed ahead, and two minutes more, and when it was too late to avoid collision, before putting her engines at full speed ahead, and in the meantime she had continued to encroach upon the Servia's course and was making sternway at the time the vessels collided.

"6. When the vessels came together the bow of the Servia canted a little to starboard, while her engines were reversed, and her starboard bow came into contact with the starboard quarter of the Noordland at the extreme stern. Both vessels were injured and the Servia sustained damages in the sum found by the commissioner of the District Court.

"7. Both steamships were properly officered, manned, and equipped. Those in charge of the Servia exercised proper vigilance in observing the Noordland, but those in charge of the Noordland were inattentive in observing the Servia and in observing the speed at which their own vessel was nearing the New York shore after she had reached mid-river, and were

negligent in permitting her to back so near to the New York side.

" 8. There were no vessels or obstructions in the river at the time to complicate the movements of the Noordland, and it was entirely unnecessary for her to back much, if any, beyond the middle of the river in order to straighten upon her course, but she nevertheless did back at a speed gradually decreasing from five to six knots an hour until she came within 1000 feet or nearer of the New York side and struck the Servia."

There is a bill of exceptions, which, after setting forth the findings of fact by the court, states as follows :

" Whereupon the libellant offered to the said court the following additional findings of fact:

" ' First. The course of the Servia was ahead down stream on the New York side from Houston Street, and of the Noordland astern across stream from Jersey City about opposite the place of collision.'

" Which the said court refused, except as already found, and the libellant duly excepted to such refusal.

" ' Second. The vessels were on crossing courses, the Servia having the Noordland on her starboard hand.'

" Which said court refused, except as already found, and the libellant duly excepted to such refusal.

" ' Third. Just before the collision, but too late to overcome her headway or prevent the vessels coming together, the Servia reversed full speed astern, causing her bow (her propeller being right-handed and her helm being aport) to cant over to starboard towards the Noordland.'

" Which said court refused to find, and the libellant duly excepted to such refusal.

" ' Fourth. The Servia struck the Noordland at the port side of her fantail, at the extreme stern, doing considerable damage.'

" Which the said court refused, except as already found, and the libellant duly excepted to such refusal.

" ' Fifth. If the Servia had reversed her engines a minute sooner, as she might perfectly well have done, there would have been no collision.'

Opinion of the Court.

"Which the said court refused to find, and the libellant duly excepted to such refusal.

"'Sixth. If the Servia had continued her course without stopping, she would have gone clear.'

"Which said court refused to find, and the libellant duly excepted to such refusal.

"'Seventh. The master of the Servia proceeded upon the opinion that his vessel had right of way; that the Noordland was required to keep out of her way. This led to the Servia coming into dangerous proximity to the Noordland. Instead of then keeping on, according to this view of her captain, the Servia by reversing and canting her head towards the Noordland brought about the collision.'

"As to the seventh request, the court found that the master of the Servia supposed and claimed that his vessel had the right of way. In other respects this finding was refused, and the libellant duly excepted to such refusal.

"'Eighth. To the southward and westward of the course of the Noordland as she backed towards New York were flats and shoals, to avoid which, when she straightened on her course, made it desirable for her to reach across as far as was safe towards the New York side of the river.'

"Which said court refused to find, and the libellant duly excepted to such refusal.

"'Ninth. The opinion and observation of the master of the Servia were that it is usual for steamers going to sea from the Jersey side of the river to back over to from eight hundred to a thousand feet of the New York piers — just to clear them. This is usual where vessels are not in the way at the end of the New York piers, and suitable.'

"Which said court refused to find, and the libellant duly excepted to such refusal.

"'Tenth. The Noordland, as she was going astern, did not have the same command of her movements as was the case with the Servia.'

"Which the said court did find.

"And thereupon the said court found the following conclusions of law:

" ' 1. Each steamship was bound to conform to her own customary course and manœuvres under similar circumstances and take notice of the customary course and manœuvres and observe the movements of the other, and each had the right to assume that the other would do so.'

" To which conclusion the libellant duly excepted as being against the evidence and against the law.

" ' 2. The Servia was justified in assuming that she could safely proceed at moderate speed upon the course she had taken after she had straightened down the river, without being obstructed by the Noördland, and it was not until such time as she ought to have discovered that the Noordland was backing so near her path as to probably impede her movements that she was under any obligation to apprehend danger and take additional measures to avoid collision.'

" To which conclusion the libellant duly excepted as being against the evidence and against the law.

" ' 3. The Servia was not guilty of fault or negligence contributing to the collision.'

" To which conclusion the libellant duly excepted as being against the evidence and against the law.

" ' 4. The Noordland was in fault for backing nearer to the New York side than was necessary or was prudent, in view of the course and movements of the Servia; for not taking timely measures to stop her sternway after she had reached mid-river; and for failing to observe the movements of the Servia with due attention.'

" To which conclusion the libellant duly excepted as being against the evidence and against the law.

" ' 5. The decree of the District Court is right, and should be affirmed with costs, and it is accordingly so ordered.'

" To which conclusion the libellant excepted as being against the evidence and against the law.

" And the libellant thereupon offered to and requested the court to find the following additional conclusions of law :

" ' First. The Noordland had the right of way, and the Servia was at fault for not keeping out of her way.

" 'Second. The Servia should have stopped before she came into dangerous proximity to the Noordland.

" 'Third. The Noordland was not compelled to go ahead before she had run out her sternway, nor was she required to stop her engine nearer the Jersey side of the river.

" 'Fourth. The Servia had no right to require or expect the Noordland to run out her sternway at a greater distance from the ends of the New York piers than she did.

" 'Fifth. The Servia, having elected to go on, was at fault for reversing full speed astern and putting her helm aport when so near the Noordland that before her headway was stopped her bow would be carried into that vessel.

" 'Sixth. The decree of the District Court should be reversed and a decree should be entered holding the Servia in fault for the collision, with costs to the appellants of the District and Circuit Courts and a reference to ascertain the damages of the Noordland.'

" And the court declined to find any further conclusions of law than already found; to which refusal of the court to find the said six additional conclusions of law, and each of them, the libellant duly excepted as being against the evidence and against the law."

It is stated in the bill of exceptions that it contains all the evidence material to any of the exceptions.

It is alleged by the appellant as error (1) that the Circuit Court should have made the eighth and ninth findings of fact requested on behalf of the Noordland; (2) that it should have made so much of the seventh finding of fact requested on behalf of the Noordland as found that the master of the Servia proceeded upon the opinion that his vessel had the right of way; (3) that the Circuit Court erroneously found the first, second, third, and fourth conclusions of law made by it; (4) that it erroneously refused to find, as requested for the Noordland, that she had the right of way and that the Servia was at fault for not keeping out of the way; (5) that it erroneously refused to find, as requested for the Noordland, that the Servia should have stopped before she came into dangerous proximity to the Noordland; (6) that it erroneously re-

fused to find, as requested for the Noordland, that she was not compelled to go ahead before she had run out her stern-way, nor was she required to stop her engines nearer the New Jersey side of the river; (7) that it erroneously refused to find, as requested for the Noordland, that the Servia had no right to require or expect the Noordland to run out her stern-way at a greater distance from the ends of the New York piers than she did; (8) that it erroneously decided that the Noordland was in fault; and (9) that it erroneously decided that the Servia was free from blame.

It is contended here on behalf of the Noordland (1) that the vessels were on crossing courses, and that the Servia, having the Noordland on her starboard side, was required by rule 19 of the steering and sailing rules set forth in § 4233 of the Revised Statutes of the United States, and by article 16 of the act of March 3, 1885, c. 354, (23 Stat. 438, 441,) to keep out of the way of the Noordland; (2) that the collision occurred because the Servia claimed the right of way and acted accordingly, and that the Circuit Court not only refused to find that the Noordland was entitled to the right of way, but approved the action of the master of the Servia in appropriating the right of way to that vessel; (3) that, if the Noordland was entitled to the right of way, it was error for the Circuit Court to refuse to find that the Servia should have stopped before she came into dangerous proximity to the Noordland; (4) that there were no special circumstances to deprive the Noordland of her right of way, nor was she unreasonable in insisting upon her right; (5) that the Servia could not be excused for her failure to keep out of the way of the Noordland on the ground that she had the right to assume that the Noordland would not obstruct her course, or would yield to the Servia the right of way to which the Noordland was entitled; (6) that the assumption upon which the Servia is supposed to have acted is pure assumption, those in charge of the navigation of the Servia not having acted upon such an assumption; (7) that it was error in the Circuit Court not to find the eighth and ninth additional findings of fact proposed on behalf of the Noordland; (8) that the collision

was due solely to the fact that those in charge of the Servia erroneously supposed that they had the right of way; (9) that the undisputed facts show that the Servia was guilty of inattention; (10) that if the Noordland was at fault for allowing an interval to elapse between stopping her engines and going ahead, then the Servia was also at fault for allowing an interval to elapse between stopping her engines and going astern; and (11) that the decree of the Circuit Court should be reversed, and a decree made in favor of the Noordland for her damages, with costs.

But we are of opinion that the decree of the Circuit Court was correct and must be affirmed.

The first conclusion of law of the Circuit Court, that "each steamship was bound to conform to her own customary course and manœuvres under similar circumstances, and take notice of the customary course and manœuvres and observe the movements of the other, and each had the right to assume that the other would do so," was correct. The known usage as to the movements of each vessel preparatory to getting upon her course to sea was established as a custom, and each vessel was justified in assuming that the other would perform her duty in that respect. *Williamson* v. *Barrett*, 13 How. 101, 110; *The Vanderbilt*, 6 Wall. 225; *The Free State*, 91 U. S. 200; *The John L. Hasbrouck*, 93 U. S. 405, 408; *The Esk and The Niord*, L. R. 3 P. C. 436. It was the duty of each vessel to observe the movements of the other.

The Circuit Court was correct also in finding as a conclusion of law that "the Servia was justified in assuming that she could safely proceed at moderate speed upon the course she had taken after she had straightened down the river, without being obstructed by the Noordland, and it was not until such time as she ought to have discovered that the Noordland was backing so near her path as to probably impede her movements that she was under any obligation to apprehend danger and take additional measures to avoid collision." The court had found as facts that the Servia was proceeding under slow headway down the river, at a distance of from 800 to 1000 feet from the New York shore, and heading about south by

west one-half west, thus having from 1200 to 1400 feet be-tween her starboard side and the middle of the river (the river being about 4400 feet wide) toward which the Noord-land was backing. The Servia was, therefore, heading well under the Noordland's stern, the latter having abundance of the width of the river for her manœuvre, and knew the usage of the Noordland to back to about the middle of the river, and saw that the engines of the Noordland were stopped when she had reached about the middle of the river, indicat-ing that the Noordland intended to follow her usage. The Servia, therefore, had a right to assume that the Noordland would head down the river and proceed to sea. It became the duty of the Servia only to proceed carefully on her course, keeping watch of the Noordland. No danger was apparent. The Servia's course was well clear of the Noordland, and of the course which the Servia had the right to believe the Noordland would promptly take. Marsden on Collisions, Ed. 1880, 233; *The Ulster*, 1 Mar. L. C. 234; *The Scotia*, 14 Wall. 170; *The Free State*, 91 U. S. 200; *The Rhondda*, 8 App. Cas. 549; *The Jesmond and the Earl of Elgin*, L. R. 4 P. C. 1.

The Servia stopped her engines when she had got near enough to see that the Noordland continued to make stern-way, and when about 1000 feet away from her, and immedi-ately afterwards the Servia put her engines at full speed astern and ported her helm. It then appeared to the Servia that the Noordland, in violation of the usage and of her duty, was proposing to maintain her sternway so as to bring her across the path of the Servia, and that there was danger of collision. Then it became the duty of the Servia to take measures to avert a collision, which she did, as above stated.

The Circuit Court held that the Servia was not guilty of fault or negligence contributing to the collision. This is a proper conclusion from the findings of fact that she was prop-erly officered, manned, and equipped; that those in charge of her exercised proper vigilance in observing the Noordland; that the Servia was well over toward the New York shore, leaving ample room for the movements of the Noordland;

that the Servia was under slow speed; that she stopped her engines as soon as she saw that the Noordland was under sternway, although her engines had been stopped; and that the Servia put her engines at full speed astern as soon as she saw that such sternway of the Noordland was continuing so as to indicate danger of collision. The Servia, therefore, complied with all the requirements of the law.

The Circuit Court held, also, that the Noordland was in fault for backing nearer to the New York side of the river than was necessary or was prudent in view of the course and movements of the Servia; for not taking timely measures to stop her sternway after she had reached mid-river; and for failing to observe the movements of the Servia with due attention. This was a proper conclusion of law from the findings of fact, that it was the custom of the Noordland to back to mid-river in her manœuvre of turning; that there were no vessels or obstructions in the river at the time to complicate her movements; that it was entirely unnecessary for her to back much, if any, beyond the middle of the river, in order to straighten upon her course; that when she reached mid-river, she stopped her engines and signalled that she intended to starboard her helm and go ahead; that she then waited two minutes longer before putting her engines at half speed ahead, and waited two minutes more before putting her engines at full speed ahead; that her speed astern, prior to the stopping of her engines, had been five or six knots an hour; that the two vessels struck when the Servia was 1000 feet or less from the New York shore and was making sternway; and that those in charge of the Noordland were inattentive in observing the Servia and in observing the speed at which the Noordland was nearing the New York shore after she had reached mid-river, and were negligent in permitting the Noordland to back so near to the New York side.

This negligence on the part of the Noordland in observing the Servia, and in observing how the Noordland was encroaching on the course of the Servia, is a sufficient explanation of the collision which ensued. *The Genesee Chief*, 12 How. 443, 463; *The Pennsylvania*, 19 Wall. 125, 136; *The*

*Sunnyside*, 91 U. S. 208, 214; *The Illinois*, 103 U. S. 298, 299; *The Nevada*, 106 U. S. 154, 159.

The Noordland was in fault for not starting her engines ahead at once after stopping in mid-river. There was no necessity for her to back further across the river. It is found as a fact that, after stopping her engines and signalling that she would go ahead, she did not go ahead, but waited two minutes longer before putting her engines at half speed ahead, and two minutes more, and until after she had continued to encroach upon the Servia's course before putting her engines at full speed ahead. That negligence was assigned by the District Court as the cause of the collision; and the Circuit Court finds that the Noordland was in fault for not taking timely measures to stop her sternway after she had reached mid-river.

The exceptions on the part of the Noordland to the refusal of the Circuit Court to find the proposed conclusions of law are untenable, because those conclusions of law were based on the findings of fact proposed on the part of the Noordland, which the Circuit Court correctly refused to adopt. The court substantially found as requested by the first and second additional findings of fact proposed on the part of the Noordland. The Noordland was at no time before the collision on a definite course, as contemplated by the statute and rules of navigation; and on the facts found she cannot claim that she had the right of way as against the Servia. The statutory steering and sailing rules before referred to have little application to a vessel backing out of a slip before taking her course, but the case is rather one of "special circumstances," under Rule or Article 24, requiring each vessel to watch, and be guided by, the movements of the other. A finding that the Servia had the Noordland on the starboard side, and that, therefore, the Noordland had the right of way, and the Servia was in fault for not keeping out of the way, would be immaterial, in view of the other facts affirmatively found. The Noordland was bound to conform to her usage in the river; she knew that usage, and the Servia also knew it. Only the inexcusable delay of the Noordland in observing her own

practice, which she indicated she intended to follow, brought, about the collision.

The Servia maintained her position close to the New York shore; she proceeded slowly; she observed the Noordland, closely; she stopped her engines when at a safe distance to enable the Noordland to check her own sternway; and she reversed her engines when the sternway of the Noordland indicated risk of collision. She was thwarted in her manœuvres by the faults committed by the Noordland. It was not incumbent upon the Servia to take any other precautions than she did; and she did nothing to bring on the risk of collision.

The other exceptions taken on the part of the Noordland are either immaterial or have been sufficiently remarked upon.

*Decree affirmed.*