## THE JOHN ENGLIS.

### THE GENEVA.

(Circuit Court of Appeals, Second Circuit. February 8, 1910.)

No. 130.

1. COLLISION (§ 95*)—STEAM VESSELS—SPECIAL CIRCUMSTANCES—FAILURE TO
KEEP PROPER LOOKOUT.

A collision took place at night on the East River, near the New York
side, between a ferryboat passing down and one of three barges in tow
alongside of a tug passing up. The tug was at the time rounding to un-
der a port helm to make a landing of one of her barges. The vessels were
in sight of each others' lights when a mile apart, but neither saw the
other until they were within 200 feet. *Held*, that the overtaking rule did
not apply, the tug having at the time no definite course, but that the case
was one of special circumstances under article 29 of the inland rules (Act
June 7, 1897, c. 4, § 1, 30 Stat. 102 [U. S. Comp. St. 1901, p. 2884]), re-
quiring each vessel to watch and be guided by the movements of the oth-
er, and that both were in fault for not observing such rule and keeping a
vigilant lookout.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec.
Dig. § 95.*]

Appeal from the District Court of the United States for the Eastern
District of New York.

Suit in admiralty by Thomas Monk, Jr., and another, as owners of
the barge Mary A. Monk, against the ferryboat John Englis, the tug
Geneva impleaded. Decree against The John Englis, and claimant ap-
peals. Decree modified.

Willcox & Green (Herbert Green, of counsel), for appellant.
Wallace, Butler & Brown (A. G. Thacher, of counsel), for the tug.
James J. Macklin (De Laguel Berier, of counsel), for the libelants.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. November 15, 1906, at about 5:25 a. m. on
the New York side of the East River near the Grand street ferry slips,
the ferryboat Englis came into the collision with the grain-laden boat
May A. Monk, which was the outer of two barges alongside the star-
board side of the tug Geneva; there being another boat on her port
side. As a result, the Monk sank, and considerable damage was sus-
tained by her and her cargo. The libelants as owners of the boat and
bailees of the cargo proceeded against the ferryboat, whose claimant
brought in the tug under the fifty-ninth rule. The decree of the Dis-
trict Court was against the ferryboat alone, and the petition under the
fifty-ninth rule was dismissed, with costs.

The morning was very dark and the tide strong flood. The ferry-
boat was coming down stream from Twenty-Third street, New York,
bound to Broadway, Brooklyn, with her regulation lights and cabin
lights burning. The tug was bound up the river showing her side
lights and towing lights, the boats in tow showing white lights on
poles. She rounded to under a hard aport helm for the purpose of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

landing the Monk at Jones' Mills, a little below the Grand street ferry on the New York side. The parties in their pleadings treated the situation as governed by the rule regulating overtaking vessels; the ferryboat being bound to keep out of the way of the tug. Subsequently the ferryboat claimed that the vessels were on crossing courses at the time of collision, and that the tug, having the ferryboat on her starboard hand, was bound to keep out of the way. We think it quite clear that the overtaking rule did not apply. The ferryboat was on a course down and the tug on a course up the river; but in making her landing the tug was not on any steady course at all. She was circling and with reference to the course of the ferryboat was going part of the time up and across the river toward Brooklyn showing her red light, part of the time going down the river showing neither side light, part of the time going toward New York, showing her green light. Therefore the situation was one of special circumstances under article 29 of the inland rules (Act June 7, 1897, c. 4, § 1, 30 Stat. 102 [U. S. Comp. St. 1901, p. 2884]), which requires both vessels to exercise precaution in such case. Her maneuver was analogous to that of the Noordland, in the case of The Servia, 149 U. S. 144, at page 156, 13 Sup. Ct. 817, at page 822, 37 L. Ed. 681. The steamship Noordland backed out from her pier in Jersey City almost across the river to New York, and then went ahead on a starboard helm for the purpose of straightening down on her course to sea. The Servia, coming down the river on the New York side, struck the Noordland on her starboard quarter. The Noordland claimed among other things that the Servia, having her on her own starboard hand, was the burdened vessel, but the Supreme Court rejected this contention, Mr. Justice Blatchford saying:

"The Noordland was at no time before the collision on a definite course, as contemplated by the statute and rules of navigation; and on the facts found she cannot claim that she had the right of way as against the Servia. The statutory steering and sailing rules before referred to have little application to a vessel backing out of a slip before taking her course, but the case is rather one of 'special circumstances,' under rule or article 24, requiring each vessel to watch, and be guided by, the movements of the other."

The vessels in the present case were in view of each other for at least the space of a mile in distance, and, considering their respective speeds, of seven or eight minutes in time. Yet they concededly did not discover each other until they were not more than 200 feet apart. There was nothing to obstruct vision except the momentary passage between them of the ferryboat Vermont as she entered the Grand street ferry slip on the New York side. The fault of the ferryboat is unquestionable. In respect to the tug we think her maneuver of crossing and recrossing the course of vessels bound up and down the river was such as to require her to keep a vigilant lookout for the purpose of warning such vessels of her movements. Yet the attention of her master in the pilothouse and her two deckhands was entirely fixed on the operation of making the landing, and during the latter part of the maneuver the deckhands, being on the port side of the tug's house, could not see up the river if they had looked. Enough has been said to show that both vessels were grossly negligent in respect to the lookout kept.

The decree is modified by directing the court below to enter the same in favor of the libelants with interest against both vessels, the claimant of the ferryboat to recover costs of both courts against the claimant of the tug.