## THE TRANSFER NO. 19.

(Circuit Court of Appeals, Second Circuit.   January 8, 1912.)

### No. 95.

COLLISION (§ 72*)—STEAM VESSELS—VESSEL NOT UNDER CONTROL.

The master of a tug, who was at the wheel, intending to land at the end of a pier on the Long Island side of East River, reversed the engines full speed astern; but the tug struck the pier with such force that he was knocked unconscious and severely injured, and the tug continued to go astern in a semicircle, with no one in charge until she came into collision with car floats alongside a transfer coming up the river. When the transfer was 2,000 feet away, she saw the tug backing away from the pier, and blew a signal of one whistle to indicate that she would pass inside, and slowed. Receiving no answer, she blew another and stopped, then an alarm and backed. *Held* that, while the master of the tug was in fault for miscalculating her headway, the transfer was also in fault in not sooner stopping and reversing.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 102; Dec. Dig. § 72.*]

Coxe, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the River & Harbor Transportation Company, as owner of the tug Gladiator, against the steam tug Transfer No. 19. Decree for respondent, and libelant appeals. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Burlingham, Montgomery & Beecher (Wm. S. Montgomery and Roderick Terry, Jr., of counsel), for appellant.

James T. Kilbreth, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. April 29, 1910, at about 5:30 a. m., the master of the libelant's tug Gladiator, intending to land at the river end of the Feed Docks above the Long Island ferry slips at Long Island City, put her helm aport and reversed her engines full speed astern. He evidently miscalculated the tug's headway, because she struck the pier so hard that he was thrown down, both his jaws broken, probably by the wheel, and he lay unconscious until after the collision happened. The tug continued to go full speed astern, with nobody in charge of her navigation, in a semicircle, until just before the collision the first deck hand, when it was too late, went into the pilot house and rang up the engines full speed ahead. When the tug's stern was pointing into the docks, she was struck on her port side by the bows of two floats in tow and alongside of Transfer No. 19 coming up the East River and severely damaged. The tide was the last of the ebb, and the course of the Transfer was within 300 to 400 feet of the Long Island piers. Her master said he saw the tug backing away from the Feed Dock when 2,000 feet off, and that he blew a signal of one whistle to indicate that he would pass inside of her and slowed, which was not answered. He blew another, which was not answered, and stopped, and then he blew an alarm and went full speed astern. At the time he blew the alarm, he was within 75 or 100 feet of the tug.

The District Judge dismissed the libel, on the ground that the collision was a pure accident; nobody being at fault. We cannot concur in this view. The master of the tug was clearly at fault in miscalculating her headway, and the only other question is whether the Transfer was also at fault. The master of the Transfer must have seen that the tug was not on any definite course, but executing a maneuver which brought the situation within the rule of special circumstances. Article 29, Inland Rules of 1897;[1] The Servia, 149 U. S. 144, 13 Sup. Ct. 877, 37 L. Ed. 681; The John Englis, 176 Fed. 723, 100 C. C. A. 579. If there was anything in the navigation of the tug to indicate that she was not under control, the Transfer's duty to exercise care was of the highest order. If, on the other hand, the master of the Transfer thought the tug was being intentionally navigated so as to go astern into a lower dock, it was his duty to aid the maneuver as far as lay in his power. Upon his own statement he had 2,000 feet of space and four minutes of time in which to act, and we are satisfied that he did not take the natural step of stopping and going astern until the collision was inevitable. Both vessels were at fault.

The decree is reversed, and the court below directed to enter a decree for half damages and half the costs of the District Court and full costs of this court in favor of the libelant.

[1] U. S. Comp. St. 1901, p. 2884.

COXE, Circuit Judge (dissenting). I think the sole cause of the collision was the erratic and wholly unexpected conduct of the Gladiator. The Transfer was coming up the river against a strong ebb tide, with two car floats, one on each side. She had every reason to expect that the Gladiator was intending to make a landing at the Long Island City dock. She could not foresee that the wheelsman had been knocked senseless by the Gladiator's collision with the dock. As soon as the master of the Transfer saw that the Gladiator was backing away from the dock into the river he blew one whistle and slowed down. Soon afterwards he blew a second whistle and stopped. As the Gladiator still kept on backing on a circular course it became apparent that something was wrong and the Transfer then blew an alarm and reversed her engine. What more could she do? The presumption was that the Gladiator was properly manned and was otherwise in a condition to navigate intelligently. The Transfer was justified in relying upon this presumption, at least until the contrary clearly appeared. When it became apparent that the Gladiator was not under control, the Transfer did all that could be done in the circumstances, namely, give an alarm signal and back. It must be remembered that only a brief period intervened between the time when the Transfer had reason to apprehend a collision and the time the vessels came together. It was then a question of seconds and a case of in extremis. The Transfer did all that could be done, but even if she made an error in such circumstances it cannot be imputed to her as a fault. The conduct of the Gladiator fully accounts for the collision. No one was at the wheel and she was running wild. No navigator, however capable and prudent, could anticipate such an extraordinary condition. The moment it was perceived that the Gladiator was not under control the Transfer did all in her power to avoid the collision. I think the decree should be affirmed with costs.