# THE JOHN RUGGE.

## THE PERTH AMBOY.

(Circuit Court of Appeals, Second Circuit. April 11, 1916.)

### No. 244.

1. COLLISION ⬡90—NAVIGATION RULES—SPECIAL CIRCUMSTANCES.

The steering and sailing rules apply to vessels navigating on steady courses, and where one of them is maneuvering merely, as, for instance, to get into or out of a dock, or turning around in harbor waters to get on her course, the situation is one of special circumstances, under article 27 of the Inland Rules (Act June 7, 1897, c. 4, § 1, art. 27, 30 Stat. 102 [Comp. St. 1913, § 7901]).

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 181–186, 196; Dec. Dig. ⬡90.]

2. COLLISION ⬡102—TUGS WITH TOWS—MUTUAL FAULTS.

A collision in the Arthur Kill between a tug, with a tow, and a lighter in tow of another tug, being the second of two boats tandem, which were leaving a dock and being maneuvered to regain their course, held due to faults on the part of both tugs; the departing tug being in fault for not waiting for the other to pass with her tow, and the latter for not keeping an efficient lookout, which would have enabled her to avoid the collision.

[Ed. Note.—For other cases, see Collision, Dec. Dig. ⬡102.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Karan Feeney and Adele Harris, owners of the derrick lighter Karan Feeney, against the steam tug John Rugge, John Rugge and another, claimants, and the steam tug Perth Amboy, the Lehigh Valley Transportation Company, claimant. Decree for libelants against the Perth Amboy, and her claimant appeals. Modified.

Burlingham, Montgomery & Beecher, of New York City (C. I. Clark and Charles C. Burlingham, both of New York City, of counsel), for appellant.

H. E. Mattison and Park & Mattison, all of New York City, for appellees.

Before WARD and ROGERS, Circuit Judges, and MAYER, District Judge.

WARD, Circuit Judge. March 13, 1914, at about 1 a. m. the tug John Rugge, with the derrick lighter Karan Feeney and three other boats in tow in two tiers on a hawser, rounded to in the Arthur Kill on the ebb tide, and landed the two port boats at the wharf of the Liebig Fertilizer Works, Cartaret, on the New Jersey side. As she

started away again from the wharf with the boat Wellington, and after her the lighter Feeney tandem, her witnesses say they saw, half a mile above, the side lights of the tug Perth Amboy coming down on the Jersey side of the Kill with towing lights, showing that she had a hawser tow. Notwithstanding this the Rugge continued to round to for the purpose of straightening out on her course down the Kill. Her whole tow, being 300 feet long, took up a large part of the navigable water, which is there from 500 to 600 feet wide. The Perth Amboy had a tow of five light barges in two tiers 100 feet wide on a hawser of 30 fathoms. Her master and pilot in the pilothouse saw the Rugge lying at the pier showing both side lights. Then they say that, when within 600 to 700 feet away, they saw the green light shut in and the red light appear. Thereupon they slowed, and did not discover that the Rugge had a tow until they were within 300 feet of it, whereupon they ported to go between it and the Jersey shore, and reversed. Notwithstanding this the Perth Amboy ran into the port side of the Feeney, which was so badly injured that she had to be beached, and her owner filed this libel against both the tugs. The District Judge directed a decree against the Perth Amboy and discharged the Rugge, from which the claimant of the Perth Amboy appeals.

[1, 2] The libel charged that the Perth Amboy was at fault for violating the starboard hand rule governing crossing courses, whereas the court held her at fault for violating the overtaking rule. We cannot agree to either view. The steering and sailing rules apply to vessels navigating on steady courses. Where one of them is maneuvering merely, as, for instance, to get into or out of a dock, or, as in this case, winding around to get on her course, the situation is one of special circumstances, under article 27 of the Inland Regulations, which requires each vessel to act prudently. The Servia, 149 U. S. 144, 13 Sup. Ct. 877, 37 L. Ed. 681; Monk v. The Englis, 176 Fed. 723, 100 C. C. A. 579; River & Harbor Transportation Co. v. Transfer No. 19, 194 Fed. 77, 114 C. C. A. 155. While the Rugge was rounding to for the purpose of getting on her course, the situation was not governed by either rule. The witnesses from the Rugge say that when she started from her wharf the Perth Amboy was half a mile above, while those from the Perth Amboy say that she was not over 700 feet. Without attempting to fix the distance, it is quite obvious that the time and distance must have been very short, because the stern of the Feeney had not got more than 30 feet away from the wharf when the collision occurred.

It seems to us that common prudence should have caused the master of the Rugge to postpone his maneuver in these narrow waters until the Perth Amboy had passed. He did not know how long or how wide her tow was, and he did know that, being on a hawser, it would be most difficult to handle on an ebb tide if any emergency arose. On the other hand, we think the Perth Amboy to blame for keeping a bad lookout. If she had any lookout forward at all, about which there is room for doubt, he was not produced. The master and pilot, who were both in the pilothouse, should have seen the lights of the

Rugge before they did, and should have seen by her towing lights that she had a hawser tow, and navigated accordingly. We are quite satisfied, notwithstanding the testimony of the witnesses from the Perth Amboy to the effect that the Rugge's towing lights must have been put up after the collision, that they were properly set and burning and should have been seen.

The decree is modified, by directing that both vessels be held at fault, and the libelant given the usual decree against them.