[6] On the other hand, we hold the Moran Company in personam for the fault of Reynolds, its agent, employed under a contract which prescribed ordinary care in seamanship, in which he failed. The Edward G. Murray, supra. The exception in the contract did not exonerate the company. It was limited to ships with steam and "propelling power." The misquotation of this exemption clause in the letter of January 28, 1920, did not override the provisions of the agreement itself. It merely called attention to the clause without pretending to amend it. Such modifications must be more clearly expressed.

---

## THE R. J. MORAN.

## THE N. Y. MARINE NO. 2.

(Circuit Court of Appeals, Second Circuit. December 7, 1925.)

Nos. 98, 99.

1. **Collision** ⊂⊃95(1)—**Collision of boats in tow held due to negligence of tugs.**

Collision between barge in tow and schooner being towed stern first *held* due to negligence of both tugs.

2. **Collision** ⊂⊃109—**Negligence in failing to prevent sinking of barge after collision not shown.**

Negligence of tug in failing to apply siphon or beach coal-laden barge to prevent sinking after collision *held* not shown.

Appeals from the District Court of the United States for the Eastern District of New York.

Libels by William S. Roberts and by Michael J. Derby and others against the steam tug R. J. Moran, her engines, etc., the Cahill Towing Line, Inc., claimant, and the steam tug N. Y. Marine No. 2, her engines, etc., the New York Marine Company, claimant. From a decree finding both tugs at fault, the tug Moran alone appeals. Affirmed.

This is a cause of collision. On a day cloudy, but of good visibility, the tug Marine No. 2 had a hawser tow of six boats, which she was taking from the Upper Bay to Dupont street, Greenpoint, which is just at the mouth of Newtown creek. The tide in the East River was strong flood, and the northerly wind was not sufficiently powerful to cut a figure in navigation.

At the same time the R. J. Moran was coming down Newtown creek having on her port side the schooner J. K. Mitchell. She was towing the schooner stern first; that craft having lain bow upstream in the creek and it being impossible to turn her around until she had been taken into more ample waters. Off the mouth of the creek a collision occurred between the stern of the schooner and the port side of the port hawser boat in the tow of Marine No. 2. The injuries to both vessels were severe; the master of the schooner and the owner of the injured boat brought these suits. They were tried together, and the court below found both tugs at fault, and both responsible for all the losses. The tug Moran alone appealed.

Foley & Martin, of New York City (William J. Martin, and George V. A. McCloskey, both of New York City, of counsel), for appellant.

Barry, Wainwright, Thacher & Symmers, of New York City (Earle Farwell, of New York City, of counsel), for appellee N. Y. Marine No. 2.

Edward Ash, of New York City, for the J. K. Mitchell.

Macklin, Brown & Van Wyck, of New York City (Paul Speer, of New York City, of counsel), for appellee Derby.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] As soon as she entered the broader waters of the East River, Moran intended to swing the schooner and tow her in the usual manner on a hawser astern. The No. 2, being bound to a wharf at the very mouth of the creek, intended to swing her tow so that she could land against

the flood tide. This was clearly a case of special circumstances, within The John Rugge, 234 F. 861, 148 C. C. A. 459, in that neither of the tugs, the only vessels concerned having motive power, was navigating on a steady course.

Further it was obvious that a tow of six boats on the usual short hawser (20 fathoms) of the East River would be temporarily beyond close control while the swing was being accomplished, for the moment No. 2 stopped or turned toward Dupont street the tow would swing upstream with the flood tide, exactly as it did. It is not clear just how far away the Moran, with her schooner, was when No. 2 began this maneuver; but it is clear that neither tug observed what the other was doing until collision was inevitable. Yet it must have been obvious to the Moran that she could not perform the maneuver of reversing her schooner and getting it on a hawser, unless she had plenty of room, and equally obvious to No. 2 that her unwieldy tow, while swinging, would occupy the whole of the mouth of Newton creek.

The principal contest of testimony was whether the No. 2 changed her course toward the Long Island shore, or merely stopped when she permitted her tow to swing up with the tide. It makes no difference whether she made the change of course or not. Both tugmasters permitted their almost equally clumsy charges to get so near each other without exchanging any signals or calling attention to themselves in any way as to produce a situation of danger. This is not technically a case of absence of lookout, but it is plainly one of lack of vigilance, and we agree with the court below that both tugs were at fault. [2] On this appeal it is sought to attribute the actual sinking of the coal-laden barge to the subsequent negligence of No. 2 in failing either to apply a siphon, or to beach the barge, instead of letting her sink at the end of Dupont Street pier. But the contact of schooner and barge was very severe; the whole stern of the schooner hit the barge amidships, and according to the evidence of the bargemaster the instant effect was to list him "all the way to the port side when she struck," so that he could at once see the water coming in. Nor did that bargemaster attribute any fault to No. 2 for not beaching him, for, when he was asked whether any attempt so to do had been made, he answered, "No, sir; he couldn't have had time;" and, further, that when the barge got to Dupont Street pier "the port side was under water." Under such circumstances, we think it mere speculation to seek for further fault, when both tugs are for lack of attention to each other in very narrow waters convicted of lack of vigilance.

Decrees affirmed, with one bill of costs in this court.