## THE TRANSFER NO. 8 (two cases).

Circuit Court of Appeals, Second Circuit.
April 9, 1928.

Nos. 171, 172.

1. Collision ⚫═99—Tug and transfer tug both held at fault for failure to maintain lookout, causing collision of tow with car floats of transfer tug.

Tug with tow, changing course, and transfer tug, with car floats, held, both at fault for failure to maintain proper lookout, resulting in collision of car floats alongside transfer tug with barges in tow of other tug.

2. Collision ⚫═98—Failure of barges to have sufficient lights held not to contribute to collision, in view of transfer tug's want of proper lookout.

Failure of barges to have number of lights required by regulations held, not to contribute to collision between barges and car floats alongside of transfer tug, where by reason of failure to maintain lookout barges were struck at very place where lighted.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the James McWilliams Blue Line, Inc., owner of the barge Blue Star, and by Mesick & Mesick, Inc., owner of barge Belle F. Mesick, against the steam tug Transfer No. 8, the New York, New Haven & Hartford Railroad Company, claimant, with the steam tug Owen J. McWilliams and the barges Belle F. Mesick, A. N. Abbie, and Thomas Reddy impleaded. From a decree in each case for libelant against the Transfer No. 8 under which the latter was held solely at fault for damage to the barges Blue Star and Belle F. Mesick arising out of a collision in East River (14 F.[2d] 448), the New York, New Haven & Hartford Railroad Company, owner of the Transfer No. 8, appeals. Decrees modified.

Haight, Smith, Griffin & Deming, of New York City (John W. Griffin, of New York City, of counsel), for Transfer No. 8.

Leo J. Curren, of New York City, for James McWilliams Blue Line.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for Mesick & Mesick, Inc.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The Transfer No. 8, with a loaded car float on either side, proceeded down the East River, east of Blackwell's Island, against the flood tide, about 4 o'clock in the morning of March 17, 1924. When she reached the lower end of the Island, she angled gradually toward the New York shore in order to get to midriver. While so proceeding, she saw the white lights of what she thought was a tug without a tow down the river, nearer to the Brooklyn shore. Shortly afterwards she saw the tug in question, which was the Owen J. McWilliams of the James McWilliams Blue Line, change her course toward the center of the river and pass across the bows of the No. 8 and her car floats. The tug passed rather close to the car floats, and got by safely, but, shortly after, there appeared directly ahead of the car floats a dark object which proved to be the McWilliams tow that the No. 8 had not seen before. The No. 8 reversed her engines and blew alarms, but one of her car floats struck the scows Blue Star and Mesick, doing the damage for which these libels were filed.

The McWilliams tug had two tiers of barges on a hawser from 75 to 100 feet long, three of them in the first tier, namely, the A. N. Abbie, Blue Star, and Belle F. Mesick, and one, the Thomas Reddy, in the second tier. The Mesick was the starboard hawser boat, the Blue Star, was in the center, and the Abbie was the port hawser boat, while the Reddy was towing behind the Abbie. The McWilliams tug left the French pier at the mouth of Newtown creek and headed up into the tide of the East River going down the river along the Brooklyn shore a short distance to get her tow straightened up before making a turn to go up the river. She also did this lest the strong flood tide set her tow back on the Man-O-War Rock when she passed out into the center of the river in order to go on her proposed course to the west of Blackwell's Island on her way up to Whitestone. Wilmott, who was navigating the tug, said that he did not see the No. 8 until he had

got so far out into the river that he was on her starboard side and could see her green lights. He said, "I looked up accidently and saw him coming;" and he then said, "I blew him two whistles and give him my intention and that I was turning on port wheel, those whistles were not answered, I waited a short spell and gave the alarm whistle, and then I blowed another alarm, and that is all I could do; I could not prevent it under any conditions, in the position we were heading." He added that the car floats were then about a quarter of a mile away. Duffield, the master of the No. 8, however, said that the McWilliams was only a few feet ahead of him when she crossed his bow. As the hawser between the tug and her front tier of barges was only 75 to 100 feet long, and the McWilliams did not see the No. 8 until she was on her starboard side, and the Mesick (which was in the first tier) was struck by the car float, the McWilliams tug and her tow evidently traveled but a very short distance between the time Wilmott first saw the No. 8 and the actual collision. Consequently it is quite impossible that when Wilmott first saw her she was a quarter of a mile away. If she had been, the tug would have got the barges the few feet necessary to pass her floats when she was proceeding against such a strong flood tide. Moreover, Hendricksen, deckhand on the McWilliams, testified before the inspectors that when he heard the first whistles the car floats were only thirty or forty feet away and though he extended this to six hundred feet in his testimony at the trial, he retracted this by saying "that is what I mean 30 or 40 feet when I first noticed them." (Folio 450). The shortness of the time between the whistles and the collision was also confirmed by the barges in charge of the Mesick.

[1] Now it is argued that the No. 8 was an overtaking vessel and should have kept out of the way of the McWilliams and her tow, but this does not seem to have been the situation. The McWilliams perhaps seemed for a very short time to have been bound down the river but she was merely leaving her pier and she went down the river a trifling distance to round up and cross into the center of the stream and get on her course. She had not straightened out her tow for that purpose even when the collision occurred, but was maneuvering to get on her course with her tow still drawn across the river in the path of all oncoming vessels. It was therefore, in all probability, a case of special circumstances. The Servia, 149 U. S. 144, 13 S. Ct. 817, 37 L. Ed. 681; The John Rugge, 234 F. 861. But even if it was an overtaking situation because the McWilliams and her tow were farther down the river than the No. 8 and her floats, the tug was not justified in changing her course from one down along the Brooklyn shore to one across the river without maintaining a lookout and with so little regard for other craft that she did not once see the No. 8 and her floats until they were right upon her. The Illinois, 103 U. S. 298, 26 L. Ed. 562; Long Island R. Co. v. Killien (C. C. A.) 67 F. 365; The Philadelphian (C. C. A.) 61 F. 862. She should have sooner seen the No. 8 and sooner have blown an alarm, and the neglect to do these things contributed to the collision.

[2] But the No. 8 was certainly also at fault. She had no lookout stationed on either float, and failed to notice the barges at all, though she saw the McWilliams before the latter turned to angle across the river. She even allowed her to cross her bows and got clear over to her starboard side without seeing her tow and only noticed the barges when they were right in front of her floats, too near to avert collision. This she seeks to attribute to the failure of the barges to have proper lights, but they had bright lights, even though insufficient in number because none were on the bows. We agree with the trial judge that the failure to see them was due to neglect to look and that the presence of the three more required by the regulations cannot reasonably be regarded as contributing to the collision, even though the burden of establishing this was on the barges. We may not say that it was impossible for more lights to have made a difference, but we can and do say that it was so highly improbable that they were a contributing cause of the collision that the barges have in all reason established the contrary. Indeed, the floats collided with those very portions of the barges where the lights were placed so that the collision was manifestly due to neglect to look, rather than a failure to maintain proper lights. In the circumstances, the barges were rightly absolved.

For the foregoing reason we hold the No. 8 and the tug Owen J. McWilliams both at fault, and direct the decrees to be modified by dividing the damages between them.