## THE FORT ST. GEORGE.

## THE OLYMPIC.

Circuit Court of Appeals, Second Circuit. August 20, 1928.

### No. 334.

1. **Collision ⬳96—Position of steamer, backed into North River, with stern 700 feet from Jersey pier ends, held not per se improper.**

Position of large steamer, which had backed out of pier into North River, preparatory to turning and going down river, when steamer coming down river and attempting to pass under her stern collided with her, *held* not per se improper, if her stern was 700 feet from Jersey pier ends.

2. **Collision ⬳105(7)—Appellate court held content with finding that ocean liner was not guilty of extravagant backing into river from pier.**

Under the evidence in suit for collision of vessel coming down river with stern of ocean liner, which had backed out of pier into the river, preparatory to turning and proceeding to sea, appellate court *held* content with trial court's finding that liner was not guilty of extravagant backing.

3. **Collision ⬳105(7)—Evidence held not to show steamer, backed into river, should sooner have appreciated danger of other steamer colliding with her.**

That steamer, backed into river from pier, preparatory to turning and putting to sea, with the stern of which steamer coming down river collided, should have sooner appreciated the danger, and so was at fault in not putting her starboard engine in forward motion more promptly, *held* not satisfactorily shown by the evidence.

4. **Collision ⬳144—To make a case for apportionment, faults of one vessel being glaring and fully adequate, clear evidence of fault of other is necessary.**

Where faults of one vessel are glaring, and fully adequate to account for collision, it requires clear evidence of fault on the part of the other vessel to make a case for apportionment.

Appeal from the District Court of the United States for the Southern District of New York.

A collision having occurred between the steamship Olympic and the steamship Fort St. George, owned respectively by the Oceanic Steam Navigation Company, Limited, and the Bermuda & West Indies Steamship Company, Limited, the owner of each vessel filed a libel against the other. The two suits were tried together, and by order of court were consolidated. From an interlocutory decree (22 F.[2d] 195) awarding damages to the claimant of the Olympic, and dismissing the libel of the Fort St. George, the claimant of the latter has appealed. Affirmed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (W. H. McGrann and J. Harvey Turnure, both of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and John K. Hartley, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. The collision occurred off Pier 59, in the North River, on the forenoon of March 22, 1924. The Olympic had just backed out into the stream and was making her turn, preparatory to starting down the river on her trans-Atlantic voyage. The Fort St. George, also bound to sea, was coming down the river and attempted to pass under the stern of the Olympic. On a hard aport helm, her bow cleared the Olympic's stern, but her port quarter about two-thirds of the way aft brought up underneath the Olympic's port counter and scraped along her rudder. Both vessels sustained damage, although the Olympic was able to continue on her voyage. All conditions of weather and tide were favorable for harbor navigation. A detailed statement of the facts found by the District Judge appears in his opinion, printed in (D. C.) 22 F.(2d) 195, and need not be here repeated.

As to the fault of the Fort St. George there can be no doubt. The District Court found against her in respect to excessive speed, not navigating far enough toward the New Jersey shore, and not porting soon enough when she decided to·go under the Olympic's stern. It will suffice to say that we regard his finding of fault on the part of the Fort St. George as amply supported by the evidence. Indeed, that she was partly at fault was not seriously disputed upon the argument; the main contentions of the appellant relating to alleged faults of the Olympic.

[1, 2] Only two of the errors of navigation charged against the Olympic require discussion. It is urged that she backed across the river an unusual and unnecessary distance, thereby unreasonably obstructing the passage of the Fort St. George, and that she failed to go ahead on her starboard engine promptly enough when the possibility of collision became apparent.

It is impossible to determine the precise point in the channel where the collision took place. As is usual, the testimony is conflicting. Witnesses for the Olympic place her stern 900 to 1,000 feet from the Jersey shore; witnesses for the Fort St. George say it was less than 600. All such estimates are notoriously unreliable, and much of it was from interested witnesses, or from those whom the District Court, for reasons stated by him, thought unconvincing. If we take as substantially correct Commander Howarth's testimony that "her bridge would be just about midstream, perhaps a little this side of that," her stern was about 700 feet from the Jersey pier ends. Such a position would not per se be improper. As we said in La Lorraine (C. C. A.) 12 F.(2d) 436, 437:

"She had good right to back reasonably for the execution of this maneuver, but she had not the privilege of backing so far as to interfere with the navigation of vessels on their courses and not unreasonably near the pierhead line. Just how far that backing privilege extends it is no more possible to define in yards than it is to extract a meaning from the word 'reasonable,' that will serve as a rule of conduct applicable to all cases irrespective of attending circumstances."

When the Olympic backed from her slip, the river was clear. The Fort St. George and the Arcadian were seen nearly a mile up river and on the easterly side of mid-channel. They could have passed her bow as readily as her stern. While it is testified that the Olympic could have pivoted without crossing mid-channel, this would be a slower maneuver, and would in our judgment be a greater inconvenience to river navigation than to back further out and make her turn more quickly. At best she will take a third of the channel, and the sooner she can get headed down river and proceed about her business the better it will be for all. Her custom, it is testified, under weather and tidal conditions such as prevailed, is to back two-thirds across the river, leaving about an equal distance to each shore.

There is no conceivable reason why she should on this day have gone out materially further than usual. While there is testimony that she did, most of it is from interested witnesses, and the rest from masters of small vessels, who are, we suspect, quite naturally hostile to these giants of the sea. The N. Y. Central Tug No. 27 (D. C.) 298 F. 959, 962. Although a ship may be at fault for a serious departure from what is usual, thus disappointing the reasonable calculations of other masters (The Servia, 149 U. S. 144, 153, 13 S. Ct. 877, 37 L. Ed. 681), there is here

little reliable evidence of extravagant backing, and it is most unlikely that it should have occurred. We are content with the court's finding that she was not at fault in this respect.

[3, 4] The only question which has caused us doubt is whether she should have put her starboard engine in forward motion more promptly, when she saw the course of the Fort St. George. This order was given at 11:12 a. m., only half a minute before the collision, according to the deck log, and simultaneously with it, according to Ismay, who kept the engine room log—although several other engineers deny the accuracy of his statement. The Fort St. George had been under observation from the time the after bridge of the Olympic cleared the end of her slip. She was then at least a mile away. We do not doubt that there was at all times room for her to have passed under the Olympic's stern, had she not tried to shave so close, or that she could have passed her bow, as did the Arcadian. When a half mile distant, she decided to pass astern and ported a little toward the Jersey shore, after passing the Colonian. The difficulty was she did not port enough, relying on her expectation that the Olympic would have moved ahead before she reached her. Not until she was less than one thousand feet away (400 to 600 feet, her chief officer says) did her officers recognize the danger and put her helm hard aport. That distance she traveled in less than a minute, and the helm movement came too late. There was no possible excuse for trying to shave so close, and not giving the Olympic a wider berth.

The Olympic, although bound to navigate with regard to the Fort St. George, was justified in keeping on with her plainly declared maneuver of backing and turning, until it became apparent that the Fort St. George was not going to co-operate. We accept the testimony that her sternway had practically ceased at the moment of collision. It could not have been great at any time. Her stern took 7½ minutes to cover about 2,000 feet. At the time of collision her port engine had been full ahead for 2½ minutes, and her starboard engine slow astern for 2 minutes and full ahead for half a minute, according to the deck log. A tug was pushing at the bow to help her turn. The officers on the after deck had watched the course of the Fort St.

George down the river, and had every reason to expect her to port over where she should. Until it became apparent that she was not going to do so, they owed her no duty to act. When she was 2,000 feet away, the navigating bridge was notified by telephone from the after bridge that she was coming close.

Commander Howarth testified that the above mentioned engine movements, initiated 2½ minutes before the collision, were made because the Fort St. George was seen to be coming very close. When she was about 1,000 feet way, the after bridge officers realized the danger and telegraphed to the navigating bridge to put the starboard engine full ahead. There is no basis to suppose that this order was not executed at once. Therefore, unless we can say that the danger should have been appreciated earlier, we cannot charge the Olympic with negligence in failing to act to avert the collision. She acted before the Fort St. George, which had not even then hard aported. Up to that moment, the latter's officers had expected her to clear. The court found that the order for ahead movement of the starboard engine was given promptly, as soon as danger was thought imminent. The appellant has not convinced us this was wrong, or that danger should have been earlier apprehended.

The situation is not one where the vessels were on an equality in facility of navigating. The backing vessel is less readily maneuvered, besides having much less way, which makes it easier to avoid her. She has the harder position, if one is demanding quick changes in heading or position. The picture in large outline is that of a huge, unwieldy ship athwart stream about her business, and of a smaller, easily controlled vessel, coming down upon her at high speed and failing to slacken, stop, or keep out of the way, although she had the other ship in clear view for over a mile, and had plenty of room to avoid her. The faults of the Fort St. George were glaring, and so adequate to account for the collision, that it would require clear evidence of fault on the part of the Olympic to make a case for apportionment. The Victory and The Plymothian, 168 U. S. 410, 423, 18 S. Ct. 149, 42 L. Ed. 519; The Persian, 224 F. 441 (C. C. A. 2).

We think the Fort St. George was properly held solely at fault, and the decree is affirmed.