### THE INVADER.
### THE JAMES J. McGUIRL.
### BURNS BROS. v. BROOKLYN EASTERN DISTRICT TERMINAL et al.
### No. 22.

Circuit Court of Appeals, Second Circuit.
Argued Oct. 9, 1931.
Decided Nov. 2, 1931.

Duncan & Mount, of New York City (H. W. Dieck, Jr., and Charles R. Millett, both of New York City, of counsel), for appellant.

Alexander, Ash & Jones, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The Invader on December 15, 1925, left Pier 9 at Weehawken, N. J., before 8 p. m., bound for Brooklyn with the car float No. 14 in tow on her port side. The flotilla crossed the river and proceeded down stream, 400 feet off the pier line, at about 6 miles an hour past the land. The tug McGuirl, with the Burns Bros. barge No. 21 on her starboard side, backed out of the slip on the south side of the Fortieth street pier, where she had landed another barge, and was bound for Fifty-Eighth street, Manhattan. The weather was clear, with light wind and flood tide. As the McGuirl and her tow backed out of the slip, the flood tide swept their sterns until the McGuirl was about opposite the upper end of the Fortieth street pier and about 50 feet therefrom. At this time the Invader was coming down the river about off the foot of West Forty-Fourth street. The McGuirl was displaying two white staff lights to the Invader at the time. She started ahead under a port wheel to turn around and proceed up the river to her destination. The master of the McGuirl saw the Invader's green light off a short way and says he blew at least two signals of two whistles each to the Invader without receiving a response, and then blew alarms with one or two more signals. He heard a signal of one whistle from the Invader just before the collision, which occurred immediately. The Invader's car float struck the starboard side of the Burns Bros. No. 21 amidships.

When the Invader saw the McGuirl's green light open up, she blew one whistle and slowed down, then after a few seconds blew a second signal of one whistle and stopped, and then, as the McGuirl did not reply, as the master says, he blew an alarm and a third signal of one whistle and reversed full speed, blowing a further signal of three whistles.

The McGuirl had a deck hand as lookout, but he did not report, from his position on the tug, the presence of the Invader. There was no lookout stationed on the barge. The deck hand on the tug did not see the Invader's red light and did not see her green light until after the first signal of two whistles was given. He estimated that at that time the Invader's green light was about 60 or 70 feet away. This would indicate that there was 70 feet separating the vessels when the McGuirl first blew. The master of the barge, Burns Bros. No. 21, did not notice anything wrong until the master of the tug shouted to him to protect his wife, who was in danger of injury at the moment of collision.

It thus appears that the McGuirl was safely positioned about 50 feet off the end of the Fortieth street pier, and proceeded under a port wheel up the river and did not see the Invader, which was bound down the river about 400 feet off the pier ends, until she was across the Invader's bow when the Invader's red light was not visible. The vessels were then in the jaws of collision. Such a lack of vigilance and care was a contributing cause to the collision. The Transfer No. 8, 25 F.(2d) 628 (C. C. A. 2); The Madison, 250 F. 850 (C. C. A. 2). The trial court we think erroneously held this to be a situation in which the Invader was the overtaking vessel. Although the McGuirl was heading down river just before she began to round, we think it a situation of special circumstances. The Transfer No. 8, 25 F.(2d) 628 (C. C. A. 2); The John Rugge (C. C. A.) 234 F. 861. The McGuirl had started from her position off the piers with the intention, as the lights would indicate, of proceeding toward New Jersey. If her navigators had been attentive, they would have seen the invader coming down the river, four pier distances away and further out in the stream. If the McGuirl had navigated with reasonable care and due regard for the presence of other vessels, she would have lain in the stream off the pier until the In-

vader passed clear, or she could have stopped and avoided the collision by working ahead slowly and allowing the Invader to come abreast of her and pass before porting her helm to round to. The John Rugge (C. C. A.) 234 F. 861.

The Invader was also at fault. She saw the McGuirl come out from the pier ends and had the right to expect her to be in the waters over which she was navigating. Both vessels carried proper lights, and, while the McGuirl was attempting to make the maneuver, she was in the path of the Invader with her situation known. There was nothing to prevent reversing to avoid the collision, but she waited until it was too late. She was charged with the knowledge that the McGuirl was not maintaining a straight course and was obliged to have regard for her navigation. The Cranford, 27 F.(2d) 710 (C. C. A. 2); Liverpool, Brazil & River Plate Steam Nav. Co. v. United States (D. C.) 12 F.(2d) 128. She should have had regard for the signals given by the McGuirl instead of continuing to navigate on her course until it was too late. The risk of collision in thus proceeding she took, when she should have attempted to avoid it. The Maverick, 84 F. 906 (C. C. A. 2); Ocean S. S. Co. v. United States, 38 F.(2d) 782 (C. C. A. 2).

The decree will be modified and both vessels held at fault.