## THE WILLIAM A. JAMISON.

### (Circuit Court of Appeals, Second Circuit. March 13; 1917.)

### No. 172.

1. COLLISION ☞107—RULES—SPECIAL CIRCUMSTANCES.
    Where a vessel is navigating near the ends of piers while a tug is bringing boats from a nearby slip to make up its tow, the case is one of special circumstances, within article 27 of the Inland Rules (Act June 7, 1897, c. 4, § 1, 30 Stat. 102 [Comp. St. 1916, § 7901]), and the other rules do not apply; the tug not being on any course.
    [Ed. Note.—For other cases, see Collision, Cent. Dig. § 224.]

2. COLLISION ☞95(7)—TOW—COLLISION NEAR ENTRANCE TO SLIP.
    While a tug with a coal boat on her port side was passing down East River at night near the Brooklyn piers, and another tug was coming out of a slip with a car float moving forward, and the car float came into collision with the coal boat, held that the down-bound tug was in fault for not keeping nearer the middle of the river, and for not keeping a proper lookout, and that the other tug was also in fault for failure to have a lookout in her bow, who would have seen the approaching tow sooner than the master, who was in the pilot house, both navigating and keeping lookout.
    [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by John F. Hurley against the steam tug William A. Jamison, William A. Jamison and others, claimants,

and the steam tug Francis J. Reichert, the Reichert Towing Line, Incorporated, claimant. Decree against the Reichert alone, and the other parties appeal. Modified.

Herbert Green, of New York City, for libelant-appellant.

Foley & Martin, George V. A. McCloskey, and William J. Martin, all of New York City, for claimant-appellant.

Harrington, Bigham & Englar, and T. Catesby Jones, all of New York City, for claimants-appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. December 29, 1915, at about 3:45 a. m., of a clear, dark night, with an ebb tide, the tug Reichert rounded Corlear's Hook and came down the East River, having the light coal boat Broadway on her port side. At the same time, lower down the river, on the Brooklyn side, the tug Jamison was engaged in taking a car float loaded with five cars on her starboard side from one of the Jay Street Terminal piers, preparatory to proceeding down stream. The bow of the car float, heading towards New York, collided with the port side of the coal boat, doing considerable damage.

The District Judge found that the coal boat obstructed the vision of the master of the Reichert on his port side and that the collision took place near the Brooklyn piers. He found the Reichert at fault for not navigating at or near the middle of the river. We see no reason to differ with him on these points. The libel against the Jamison was dismissed.

[1] It is quite impossible to reconcile the stories of the parties. The situation was, in our opinion, one of special circumstances under article 27 of the Inland Regulations, which required each vessel to act with prudence. A vessel coming out of her slip and maneuvering to get on her course, or one maneuvering to get into her slip, is not navigating upon any course, and the steering and sailing rules do not apply. The leading case is The Servia and The Noordland, 149 U. S. 144, 13 Sup. Ct. 817, 37 L. Ed. 681, which we have consistently followed.

The Reichert was manifestly at fault for being too near the Brooklyn shore and for keeping a bad lookout, or no lookout at all. When she was within 100 feet of the car float, a man was seen to be running forward on the coal boat and crying out to the master of the Reichert to port his helm. This man was not produced at the trial, because he could not be found. We feel sure that his notice was the first knowledge that the master of the Reichert had of the dangerous proximity of the Jamison. Otherwise he would have ported seasonably and given the Jamison plenty of room to get on her course. So little did he appreciate the situation that even at the trial he insisted that the Jamison was backing out, whereas it was perfectly well proved that she was going ahead.

[2] Fault is charged against the Jamison because, within our decision in The John Rugge, Jr., 234 Fed. 861, 148 C. C. A. 459, she did not wait until the Reichert had passed clear before leaving her slip. But the circumstances in that case were very different. The tug Rugge left her slip with a hawser tow and crossed a narrow channel to go

down with the ebb tide, knowing that a little higher up another tug was coming down with a hawser tow. In this case neither boat had a hawser tow, and there was plenty of room for the Reichert to go clear.

The fault of the Jamison, if any, is in the absence of a lookout. Both deckhands were at the stern of the tug taking in the lines, and the master in the pilot house was both navigating and keeping a lookout. This is a divided duty, which the law will not accept as performance. Unless it appear that the failure to keep a lookout did not contribute, and could not have contributed, to the collision, the Jamison must also be held at fault. Her master said he did not reverse until he heard this order to the master of the Reichert to port his helm, and further testified:

"Q. Why didn't you reverse your engine sooner than you did, Captain? A. Well, I didn't think it necessary. We were the only two boats in the river at the time, and there was such a distance between me and the New York shore, if a man could see me, why, I didn't have any idea he was going to come close enough to me to collide."

If his attention had not been wholly occupied with the maneuver he was making, he would have seen that the Reichert was steadily approaching, and would have reversed sooner. So, if a lookout had seasonably warned him of the approach of the Reichert, he could, by an alarm signal, have advised the Reichert of the danger of the situation. We have lately held a vessel not otherwise at fault liable in such a case. The Tug Wonson, 239 Fed. 857, —— C. C. A. ——.

The decree is modified, and the court below directed to enter the usual decree for half damages in favor of the libelant against both vessels.