## THE M. MORAN.

## THE COLERAINE.

(Circuit Court of Appeals, Second Circuit.    November 13, 1918.)

### Nos. 52, 53.

1. COLLISION ⚷⟹107—STARBOARD HAND RULE—SPECIAL CIRCUMSTANCES.
   The starboard hand rule does not apply to a steamer backing out of a slip before she gets on her definite course; but the special circumstance rule (article 27 [Comp. St. § 7901]) applies to steamers maneuvering to get on their course.

2. COLLISION ⚷⟹102—RIVERS—FAULT OF BOTH VESSELS.
   Where a tug, backing from a slip between piers in the North River, came into collision with the port side of a tug bound down the river, *held*, that both were at fault and that the damage should be divided; the tug proceeding down the river being at fault for coming at a high speed close in to the ends of the piers, etc., and the tug backing out being at fault for failure to blow the usual slip whistle, etc.

Appeals from the District Court of the United States for the Eastern District of New York.

Libel by Thomas Tracy against the steam tug M. Moran, her engines, etc., claimed by the Moran Towing & Transportation Company, together with a libel by the Moran Towing & Transportation Company against the steam tug Coleraine, her engines, etc., claimed by Thomas Tracy. From a decree for the libelant in the first cause, and for the claimant in the latter (238 Fed. 636), the claimant in the first cause and libelant in the second appeals. Reversed and remanded, with directions.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the Eastern District of New York in favor of the owner of the tug Coleraine against the steam tug M. Moran and dismissing the cross-libel of the owner of the M. Moran.

August 29, 1915, on a dark night, good for seeing lights, at about 1:30 a. m. the tide being ebb along the piers and flood in the middle of the river, the tug Moran, backing out from the slip between the piers at the foot of Ninety-Fifth and Ninety-Sixth streets, North River, came into collision with the port side of the tug Coleraine, bound down the river to Fiftieth street, injuring her so that she was beached near Ninety-First street.

[1] The District Judge fell into the same error as to the sailing and steering rules in this case as he did in the case of Flannery v.

⚷⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Tug Bouker No. 2, 254 Fed. 579, ——— C. C. A. ——, our opinion in which is handed down herewith. He said:

"The Moran had the Coleraine on her starboard hand, and, as the collision must have occurred some distance outside the piers, the failure of the look-out and the neglect to give whistle signals would further fix liability upon the Moran."

The starboard hand rule does not apply to a steamer backing before she gets on her definite course. The special circumstance rule (article 27, Act June 7, 1897, 30 Stat. 102, c. 4 [Comp. St. § 7901]) applies to steamers maneuvering to get on their definite courses, The Servia and Noordland, 149 U. S. 144, 156, 13 Sup. Ct. 877, 37 L. Ed. 681; our own decisions in the The John Rugge, 234 Fed. 861, 148 C. C. A. 459, and The William A. Jamison, 241 Fed. 950, 154 C. C. A. 586. The decisions of this court, on which the District Judge relied—The Reliable, 183 Fed. 116, 105 C. C. A. 406, and The Columbia, 205 Fed. 898, 124 C. C. A. 230—were cases of steamers going ahead; the former falling within the reasoning of The Breakwater, 155 U. S. 252, 263, 264, 15 Sup. Ct. 99, 39 L. Ed. 139, and the latter being decided on its special circumstances.

[2] The District Judge also found the Moran at fault for not blowing the usual slip whistle and for not having a lookout. Upon the first point we agree with him, but think the second immaterial, because in the view we take of the situation the absence of a lookout did not contribute to the collision. If it were a fault, the Coleraine was as much to blame as the Moran, because her lookout was sitting on the bitts forward with his back to New York, smoking a cigarette, and did not see the Moran until the Coleraine blew her whistle, when he looked around.

We are quite satisfied that when the vessels first saw each other the Moran was backing slowly, with her stern to port, clearing the end of the covered pier at the foot of Ninety-Sixth street. The Coleraine blew one whistle and an alarm, rang an extra jingle, because as her master said, there was no time to reverse, and hard-aported, while the Moran immediately went full speed ahead, yet the vessels came together. This convinces us that the collision was unavoidable when the vessels first began to navigate with reference to each other and must have happened close to the pierhead. The District Judge made no finding as to the location.

The Coleraine was at fault for coming down the river at high speed close in to the ends of the piers between Ninety-Fifth and Ninety-Seventh streets. If we were to adopt the account of her witnesses that the collision took place some 300 feet out in the river, she would have been clearly at fault, because she could have easily avoided the Moran by porting with her steam steering gear.

The decree is reversed, with costs, and the cause remanded to the District Court, with instructions to enter the usual decree for half damages.