**McWILLIAMS BROS., Inc., v. PAYNE, Director General of Railroads.**

(Circuit Court of Appeals, Second Circuit.   November 16, 1921.)

No. 20.

1. **Collision ⊂⊃107—Tug backing out of slip held bound to notice load and course of approaching tug, ordinary rules not applying.**

   A tug, backing out of her slip and rounding to under a hard aport wheel to swing down the river, *held* bound to exercise reasonable care, and take notice that a tug coming up the river, about 900 feet off, on the same side, within 400 feet of the shore, was heavily laden and trying to keep a steady course; the steering and sailing rules being inapplicable to a vessel situated as the tug.

2. **Collision ⊂⊃102—Tug backing out of slip and tug coming up river on left-hand side, with heavy tow, held both at fault.**

   A tug, backing out of a slip with two barges in tow and rounding to under a hard aport wheel to swing down the river, and a tug coming up the river on the same side, about 900 feet off, and within 400 feet of the shore, with a heavy car float in tow, *held* both at fault for a collision between a barge on the port side of the former tug and the car float; the tug coming up the river being presumptively at fault, despite the strong ebb tide, in that she was on the left-hand side, instead of the middle of the river, as required by the New York statute, and hence obliged to navigate so as to accommodate the other tug's maneuvering, and also at fault for placing her long, heavy tow in crowded waters, while the maneuvering tug was at fault, in that, after giving one blast of the whistle, she proceeded further out into the river, thus placing herself in the way of the car float.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by McWilliams Bros., Inc., against John Barton Payne, Director General of Railroads, etc.   Decree for libelant, and respondent appeals.   Affirmed.

Haight, Sandford, Smith & Griffin, of New York City (Henry M. Hewitt, of New York City, of counsel), for appellant.

Herbert Green, of New York City, for appellee.

Before ROGERS, MANTON, and MACK, Circuit Judges.

MANTON, Circuit Judge.   On April 20, 1918, at about 11 o'clock in the morning, a collision occurred between libelant's barge Carrie, which was in tow of the libelant's tug Abraham P. Skidmore, and a car float in tow of the New York, New Haven & Hartford Railroad's tug Transfer No. 17.   The collision occurred in the East River, off Seventeenth street, near the Manhattan shore.   The Transfer No. 17 had two car floats in tow, one on each side.   She was proceeding from Greenfield, N. J., down the North River, and rounded the Battery. She was coming up the East River on her way to Oak Point, and was keeping close to the Manhattan piers for the purpose of avoiding the ebb tide and taking advantage of the slack water at the pier ends.   The Skidmore took the Carrie and another barge, which were in the slip between Piers 21 and 22, Manhattan, and intended to shift them down

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to Pier 18, three piers below. Both her barges were light, and, as fastened, the Carrie was on the port side. After backing out with the barges, the Skidmore rounded to under a hard aport wheel to swing down to Pier 18. While thus maneuvering, she gave a signal of one whistle to the Transfer 17, and the latter answered with a similar signal. The Transfer No. 17 had a very heavy tow while coming up the river, and kept within 400 feet of the Manhattan shore.

[1] It is apparent that the Skidmore intended to get out into the stream sufficiently to turn under a port helm, and so drop down with the ebb tide to Eighteenth street. While doing this, she was pointing slightly to the Brooklyn shore. The Transfer No. 17 was about 900 feet off, and was bearing about a point or nearly so on the Transfer No. 17's port bow. While engaged in this maneuver, the situation presented made applicable the rule in a case of special-circumstances. The Transfer No. 17 was the privileged vessel, but the Skidmore was bound to exercise reasonable care, and take notice that the Transfer No. 17 was heavily laden and trying to keep a steady course. The situation presented by a vessel coming out of the slip and maneuvering to get on her course, or maneuvering to get into her slip, is not navigating upon any course, and the steering and sailing rules do not apply. The Coamo (C. C. A.) 267 Fed. 686; The Wm. A. Jamison, 241 Fed. 950, 154 C. C. A. 586; The Black Diamond (C. C. A.) 273 Fed. 811.

[2] Examining the vessels under these special circumstances, and with due regard for the rules applicable thereto, we think both vessels were at fault. The Transfer No. 17, in her navigation, violated the New York statute (Ash's Greater New York Charter [4th Ed.] 1253, § 757), for she was on the left-hand side of the stream when the statute required her to be in the middle of the river. She is not excused because of the strong ebb tide. The Black Diamond (C. C. A.) 273 Fed. 811. Her participation in a collision makes her presumptively at fault. Under the circumstances, she was obliged to navigate so as to accommodate the maneuver of the Skidmore. She ought to have seen what the Skidmore was doing and navigated accordingly. She was at fault for placing her long, heavy tow into crowded waters, and this directly contributed to the collision. It is this type of collision the statute intended to prevent. The Skidmore, after giving the whistle, proceeded further out into the river. By this navigation she placed herself in the way of the heavy car floats. She did not stop or navigate with that reasonable prudence which would have helped to avoid the collision.

We think both vessels were at fault, and that therefore the result below must be affirmed.

Decree affirmed.