## THE NEWARK.

(Circuit Court of Appeals, Second Circuit. April 9, 1923.)

No. 240.

1. **Collision** ⊜⟹106—**Rule of special circumstances applicable, where tug moving in slip near piers.**

Where one tug is navigating or moving in a slip and near the piers bounding the same, the situation is always regarded as calling into play the rule of special circumstances.

2. **Collision** ⊜⟹96—**Evidence held to require finding that both tugs at fault.**

In libel for collision between tugs, evidence that libelant's tug was backing out of a slip bounded on one side by piers, as claimant's tug approached the pier end, intending to stop there for orders, but that the latter tug overreached the pier end, at which point the collision occurred, the libelant's tug having blown no slip whistle, but her flagstaff having been observed by claimant's navigators as they approached the pier, *held* to require decree that both vessels were at fault, one for failure to blow the appropriate slip whistle, and the other for approaching the pier with such speed as to be unable to stop within the time afforded her after seeing the moving flagstaff.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel in admiralty by the Flannery Towing Line, Inc., against the steam tug Newark, her engines, etc.; the Delaware, Lackawanna & Western Railroad Company, claimant. Decree for claimant, and libelant appeals. Decree modified.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellant.

J. E. Morrissey, of New York City, for appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge. [1] This case is one of navigating, or rather moving, in a slip and near the piers bounding the same—a situation always regarded as calling into play the rule of special circumstances. The William A. Jamison, 241 Fed. 950, 154 C. C. A. 586; The Washington, 241 Fed. 952, 154 C. C. A. 588.

Libelant's tug, the Quigley, was backing out of the slip bounded on one side by a pier, at the end of which was an office or place of call, to which claimant's tugs were in the habit of resorting for orders. The Newark, belonging to claimant, approached the pier end, intending to stop there and inquire for further directions. She overreached the

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pier end, so that her bow collided with the taffrail of the Quigley at a point 6 or 7 feet beyond the termination of the pier end and about the same distance out in the stream; i. e., beyond the end of the slip. The Quigley had blown no slip whistles, but just as the Newark was approaching the place where she intended to make fast at the pier end her navigators saw the flagstaff of the Quigley as she backed out as aforesaid.

[2] The foregoing statement is taken from the testimony of the Newark's captain, and on it we are of opinion that that vessel was at fault as well as the Quigley, whose fault, as found below, consisted in failure to blow the appropriate slip whistle. The M. Moran, 254 Fed. 766, 166 C. C. A. 212; McWilliams v. Payne (C. C. A.) 276 Fed. 917.

The Newark is at fault for approaching the pier end with such speed that she was not able to stop within the time afforded her on seeing the Quigley's moving flagstaff. In our opinion, had she been moving at moderate speed, appropriate to such crowded navigation, there would have been no collision.

The decree below is modified, so as to hold both vessels in fault, and costs of this court are awarded to appellant; costs below to be divided.