## THE SOCONY NO. 19.

Circuit Court of Appeals, Second Circuit.
March 5, 1928.

No. 181.

**1. Collision** ⟨⟩106—Case of vessel maneuvering to leave slip is one of "special circumstances."

The case of a vessel maneuvering to leave her slip is one of "special circumstances," and ordinary steering and sailing rules and signals, made for vessels navigating on definite courses, do not apply.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Special Circumstances.]

**2. Collision** ⟨⟩95(4)—Small launch held at fault for collision with barge being maneuvered out of slip by tug, where it did nothing to get out of way.

Small motor launch *held* at fault in collision with barge, which tug was maneuvering out of slip, where launch, though having tug and barge in plain view for five minutes, did nothing to keep out of the way of their maneuvering.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by the General Ship Scaling Corporation against the steam tug Socony No. 19, her engines, boilers, etc., wherein the Standard Transportation Company is claimant. From an interlocutory decree holding the steam tug solely at fault for collision between barge, which tug had in tow, and libelant's motor launch, claimant appeals. Reversed and remanded, with directions.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, Richard F. Lenahan, and Pierre M. Brown, all of New York City, of counsel), for appellant.

Bigham, Englar & Jones, of New York City (Charles W. Hagen, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The libelant's vessel, Helene No. 2, was a motor launch, 57 feet in length, carrying heavy machinery and equipment, used for scaling vessels and for electric welding. She had a 32 horsepower gasoline motor, and her crew consisted of an operator and a man to handle the engines. Two other vessels concerned were the Socony No. 122, a loaded barge carrying fuel oil to ships, which was 250 feet long, and in tow of the Socony No. 19, a steam tug about 89 feet in length. The barge was on the south side of Pier 5, Bush Terminal, bow in. The tug went alongside No. 122 on her extreme stern quarter, and made fast to her with a strap, head line, and stern line. A deckhand was stationed as a lookout on the stern of the barge. Thereupon the tug blew the usual long slip whistle and proceeded to back the No. 122 out into the stream. When the barge had cleared the slip, the tug began to swing her around in order to get her on her course, which was to be up the river to Pier 35, Brooklyn. Meanwhile the Helene No. 2 was coming across the bay to Pier 5, Bush Docks, saw the Socony No. 19 when something less than a half mile away, and when she got within 600 or 700 feet of the pier gave a stop bell, because the Socony No. 19 was backing her barge out of the slip.

When the tug, by backing her engines, had pivoted the barge, so that the latter was heading in a southerly direction, the Helene No. 2 assumed that she was going down the bay toward Staten Island, instead of up to Pier 35. As the Socony No. 19 swung her barge farther around, the Helene No. 2, who was then about 500 feet from the pier head, did not get out of her way, and as a result was struck a swinging blow on her starboard bow by the overhang of the bow of the barge.

The master of the Socony No. 19 testified that, when the Helene No. 2 was 250 or 300 feet away from him, he saw her start her engines ahead, and that he then stopped his tug's backward motion and put his wheel hard astarboard to shove his bow to the southward, away from the Helene No. 2. The master of the latter said she did not start up, but lay five minutes outside the pier, waiting for the Socony and her barge to proceed, and that when he saw the tug swinging

her barge around, instead of proceeding south, as he had expected, he reversed his engine, but too late to avoid collision. He also said that the Socony pulled her barge out of the slip, got her in a position lying north and south and lengthwise of the ends of the piers, then let go her lines, made fast on the stern quarter of the barge, and started to pivot her around.

The trial judge held that the collision was occasioned through the fault of the Socony No. 19 in failing to signal the Helene No 2 that the former was about to make a complete turn and go up the bay, and that there was no fault on the part of the Helene No. 2. He also seems to have found that the Socony made fast to the starboard quarter of her barge after she had got her out into the stream, in a position parallel to the pier ends; that the Helene No. 2 had come to a full stop before this, and did not come forward on her engines thereafter. It seems doubtful whether the Helene No. 2 did not come forward, for the Socony swung her barge around while backing her engines, and it is hard to see, when this was being done, how the barge could have extended out far enough to strike the Helene No. 2, if the latter had remained 500 feet outside of the pier ends.

But, assuming that the finding of the trial court was correct, we still have a case where the tug Socony was taking a heavy barge out of her pier to get her on a course. The small motor launch, Helene No. 2, according to the account of her master, instead of keeping out of the way of the barge, came within 500 feet of the pier heads, and then, though having the tug and barge in plain view for five minutes, did nothing to keep out of the way of their legitimate maneuvers, but practically lay still until she was struck.

[1, 2] It is perfectly settled that the case of a vessel maneuvering to leave her slip is one of special circumstances. The Servia, 149 U. S. 144, 13 S. Ct. 877, 37 L. Ed. 681; The John Rugge (C. C. A.) 234 F. 861; The Washington (C. C. A.) 241 F. 952. Therefore ordinary steering and sailing rules and signals made for vessels navigating on definite courses do not apply. The Socony was executing a somewhat awkward maneuver, without taking any unnecessary room. She had blown her slip whistle; the Helene No. 2 plainly saw her, and was bound to keep out of her way while she was attempting to leave her slip and get on her course. Of course, the Socony could not be excused if she recklessly ran into the barge; but she

had a right to assume that a small launch, like the Helene No. 2, would get out of her way when there was plenty of time and space within which to do this, if the Helene No. 2 had begun to move in season.

It is evident that, when a tug made fast to the stern quarter of a barge is swinging the barge, the leverage is all against the tug. It is a slow matter either to start or to stop her swing. This is an ample reason why the tug could not avert the collision with the Helene No. 2. She was justified in supposing the latter would make a seasonable effort to get out of the way, and with every natural force against her she did what she could to break the swing of the barge when the Helene No. 2 had taken no measures to get out of the way until too late.

The fault relied on by the libelant to justify holding the Socony is that the latter attempted an unusual maneuver without giving some warning to the Helene No. 2. It is argued that the maneuver was unexpected, because the Socony and her barge for a moment lay north and south, and were, therefore, apparently about to proceed down the bay. But when a tug has got her tow outside a slip, and has not yet started anywhere, there can be no justification in making assumptions as to her destination. She is still essentially maneuvering to get on her course. The unwarranted suppositions of the master of the Helene No. 2 can serve as no basis for requiring a signal by the Socony, nor is any signal appropriate to such a situation found in the admiralty rules, sanctioned by maritime practice, or pleaded as a fault in the libel.

The interlocutory decree is reversed, and the cause is remanded, with directions to dismiss the libel, with costs.