## THE JARWIN.

### THE NEW YORK CENTRAL NO. 17.
### THE HOWARD C. MOORE.

### SIMMONS, LEE CORPORATION v. NEW YORK CENT. R. CO. et al.

### No. 15369.

District Court, E. D. New York.

Feb. 23, 1939.

Thomas A. McDonald, of New York City, for libelant.

Jacob Aronson, of New York City (C. A. White, of New York City, of counsel), for New York Cent. R. Co.

Lynch & Hagen, of New York City (Charles W. Hagen and John S. Bull, both of New York City, of counsel), for John E. Moore Co.

BYERS, District Judge.

The covered barge Jarwin was being towed, stern first, up river, abreast of pier 7 North River, on November 26, 1937, by the tug Howard C. Moore, her destination being pier 9; when the barge was between 50 and 100 feet off pier 7, she was struck on her offshore side, about amidships, by a carfloat of the New York Central Railroad Company, which was in tow of the tug New York Central No. 17 and at that moment was heading into the slip south of pier 7.

A libel was filed against the New York Central No. 17, and the latter impleaded the tug Howard C. Moore under the 56th Admiralty Rule, 28 U.S.C.A. following section 723, alleging that the collision was caused by the fault of the Moore which moved ahead and directly into the path of the carfloat being towed by the New York Central tug.

At the trial it was conceded that the libelant is entitled to recover against one or both of the respective towing vessels.

The collision occurred shortly after but close to seven o'clock A. M., and the weather was fair, with little or no wind, and an ebb tide was flowing.

The libelant's barge is 120 feet long and has a beam of 33 feet, and was carrying 400 tons of merchandise; i. e., she was practically light and drew about 2½ feet.

The dimensions of the tug Moore are 85 by 25 feet, and her draft is 11 feet.

The New York Central carfloat is 290 by 35 feet, and was carrying 9 empty refrigerator cars. The New York Central tug is 95 by 23 feet.

The libelant's barge had been lying on the south side of pier 3, about half-way in the slip, bow in; the tug entered the slip and circled around the bow of the barge, and the lines of the latter were slackened away from the pier so that the tug nosed

in on the port side of the barge as she lay; the latter was made fast off the port stern corner of the tug so that the bow of the latter was about 20 feet ahead of the stern of the barge; then the tug moved the barge out of the slip around the end of pier 3 and into the North River at a distance of about 50 feet off the pier end, and proceeded northerly as stated.

The New York Central tug and the carfloat had come across and down the river from the New Jersey shore and rounded to about 500 feet or so off pier 3, the carfloat being on the port side of the tug, which was about amidships of the float, so that the bow of the float projected well ahead of the bow of the tug. This tow had lain in the stream for at least five minutes, the tug's engines turning slowly at times, so as to maintain the position, while the entrance to the slip south of pier 7 was being cleared of obstructing vessels.

It is of importance that there was knowledge on the part of the captain of the Moore of the destination and intention of the New York Central tow, and it is so found. The latter's tug master said that, while he observed the Moore coming out south of pier 3 with the Jarwin in tow, he did not know or conjecture upon her destination. That testimony is accepted.

Under these conditions, the Moore moved northerly toward pier 9 without blowing any whistle, as the New York Central No. 17 was turning slowly to her starboard as the conditions south of pier 7 permitted, and was moving toward that slip, also without blowing a whistle; as might have been expected, since each tug chose to ignore the other tow, the starboard bow corner of the carfloat struck the Jarwin as has been stated, and under these circumstances it seems clear that both tugs were at fault. There were lookouts on the float and the barge, but what they were doing, instead of performing their duties adequately, has not been made to appear.

It will be perceived that, as the Jarwin was moving north and the carfloat was turning to the east, the view of each tug master toward the other tug was interfered with by the housing on the barge Jarwin.

That was probably unimportant so far as the New York Central tow was concerned, because the Jarwin was in plain

sight and it was the duty of the Central tug to avoid bringing the carfloat in contact with her; but it was important, so far as the duty of the Moore's captain was concerned, for he was required so to maneuver as not to bring about a collision with the New York Central tow, if that could be avoided. None the less he moved his tow northward directly into the expectable path of the other tow, without so much as sounding any whistle, although he was aware of her destination, and knew that she had been waiting to enter the slip south of pier 7, for above 5 minutes.

For the Moore, it is urged that this was a special circumstance case within The Socony No. 19, 2 Cir., 24 F.2d 653.

If the collision had occurred while the Moore was moving out of the slip south of pier 3, the citation would be pertinent, but the testimony establishes that no such thing occurred. The Moore had emerged with her tow from the slip and was on her course, and therefore ordinary steering and sailing rules and signals applied.

It is thought that it was scarcely a crossing situation, since the New York Central tow was really holding off the slip between piers 7 and 3, breasting the tide, awaiting an opportunity to enter, and there is just as much reason in requiring that the Moore should not interfere with that special circumstance, as in holding that the New York Central's maneuver should have been conducted in deference to northbound navigation off the pier end.

If the Moore had signaled her intention of crossing the bow of the New York Central tow, the latter would at least have been warned, perhaps in time to hold back in the stream. The preoccupation of the New York Central's master, in effecting his delayed entrance to the slip, is easy to understand.

The carfloat was a cumbersome vessel, and to accomplish her obvious purpose required a maneuver which could not be completed on the spur of the moment, as the master of the tug Moore well knew; as each tow was bound to proceed with due regard for the safety of the other, it is thought that they must respond equally to the libelant, and a decree to that effect, with half costs against each tug, may be entered.

Settle decree, and findings if desired.