### THE NUTMEG STATE.

### THE MONITOR.

#### HARRIS et al. v. TRACY et al.

#### SAME v. BRIDGEPORT STEAMBOAT CO.

(Circuit Court of Appeals, Second Circuit. April 16, 1895.)

COLLISION—STEAMER WITH TUG AND TOWS—SIGNALS.

A tug, with barges lashed on each side, coming down the middle of the East river, perceived a steamer just leaving her berth at a pier on the New York shore, and turning to go up the river. The tug blew two whistles, indicating an intention to pass starboard to starboard, which was immediately assented to by the steamer; but immediately afterwards the tug slowed her engines to one bell, and a collision ensued. Had she maintained her speed, it was apparent that she would have passed the point of intersection before the steamer reached the same. *Held* that, for this violation of her agreement, the tug was alone liable for injuries to her barges. 62 Fed. 847, affirmed.

This was a libel by Joseph S. Harris, Edward M. Paxson, and John Lowber Walsh, as receivers of the barge Guy and the barge No. 75, against the steamer Nutmeg State (the Bridgeport Steamboat Company, claimant), to recover damages resulting from a collision which occurred while the barges were being towed by the tug Monitor, of which the libelants were also receivers. A libel was also filed by Michael Tracy and John Tracy, owners of the barge Dickerson, which was also in tow of the tug, and was injured at the same time, against the Nutmeg State. To this libel the tug herself was subsequently made a party upon petition under the rules. In the district court the tug was held solely liable, and the Nutmeg State was

discharged. 62 Fed. 847. From these decrees the receivers of the tug have appealed.

James Armstrong, for libelant Harris.

Anson B. Stewart, for libelant Tracy.

Samuel Park, for claimant the Nutmeg State.

Before WALLACE and LACOMBE, Circuit Judges.

PER CURIAM. The collision occurred at 2:35 p. m. on December 26, 1893, under the following circumstances: The Monitor was coming down the East river, about in midstream, having three barges on each side; the Dickerson being outside, on the starboard side. The tide was ebb, and the wind northwest and strong. She had reached a point about opposite pier 39, when the Nutmeg State was perceived just starting from her berth at pier 35, and turning to go up the river. Two whistles were blown by the tug, indicating her intention to pass starboard to starboard. They were promptly responded to by the Nutmeg State. Had the navigation thus agreed upon been persisted in, there would undoubtedly have been no collision, because the Monitor would have passed the point of intersection before the steamer, on her turn to port,—necessarily a long one, because of her own length and the ebb tide,—reached the middle of the river. But the tug failed to conform her navigation to her signal. She starboarded, it is true, but, immediately after giving her signal, slowed her engines down to one bell. We concur with the district judge that this failure to keep the promise of her signal was the proximate cause of the collision. The Nutmeg State had no reason to anticipate such a violation of the agreement that the tug would keep on, and, when it was perceived that she had slowed, it was too late to avoid the catastrophe. It is unnecessary to add anything to the discussion of the facts by the district judge. Decrees are affirmed, with interest and costs, and with costs, respectively.