## THE BRIDGETON.

(Circuit Court of Appeals, Second Circuit. April 11, 1916.)

Nos. 233, 234.

Collision ⬧══95(4)—Steam Vessels Meeting—Violation of Passing Agreement.

A collision between a car float in tow alongside of a tug passing out of a slip at Communipaw and a steam lighter passing in *held* due solely to the fault of the tug in violating an agreement made by the two vessels to pass port to port, for which the width of the slip gave sufficient room.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. ⬧══95(4).]

Appeal from the District Court of the United States for the Southern District of New York.

Suits in admiralty for collision by the North & East River Terminal Company, owner, and by William Gaffney, charterer, of the steam lighter Varina, against the steam tug Bridgeton; the Central Railroad Company of New Jersey, claimant. Decree for libelants, and claimant appeals. Affirmed.

For opinion below, see 221 Fed. 510.

James J. Macklin, of New York City (F. V. Barnes, of New York City, of counsel), for appellant.

Armstrong, Brown & Purdy, of New York City (P. M. Brown, of New York City, of counsel), for appellee North & East River Terminal Co.

Foley & Martin, of New York City (Wm. J. Martin and G. V. A. McCloskey, both of New York City, of counsel), for appellee Gaffney.

Before WARD and ROGERS, Circuit Judges, and MAYER, District Judge.

WARD, Circuit Judge. February 28, 1913, the tug Bridgeton, with a loaded car float 250 feet long on her starboard side, left one of the

bridges between Piers 7 and 8 at Communipaw, Jersey City, bound across the Hudson into the East River. At the same time the loaded steam lighter Varina was coming down the river bound into the same slip. The tide was ebb; the slip is 350 feet wide and 1,350 feet long. The car float and lighter came into collision almost head on before the car float had got entirely out of the slip. The result was that the Varina sank with her cargo, both sustaining serious damage, to recover which the owners of the Varina and the charterer, as bailee of the cargo laden thereon, each filed a libel against the tug Bridgeton.

We are quite satisfied that the Bridgeton before leaving her slip blew the usual slip whistle of one long blast, which the master of the Varina should have heard, if he did not. This, however, is not a very material consideration, because at a time when the Varina knew the Bridgeton was coming out and the Bridgeton knew the Varina was coming in, they exchanged a signal of one whistle, indicating that they would pass port to port. There was quite room enough to do this, and the collision was brought about by a violation of the understanding either by the Varina or by the Bridgeton.

The witnesses on the Bridgeton say that the Varina just before the collision starboarded so as to head over to New York, and then came about under a port helm so as to head to New Jersey and right into the bow of the car float. The District Judge naturally declined to believe such an account. On the other hand, those on the Varina say that the Bridgeton, notwithstanding her signal of one blast, was, to correct the effect of the ebb tide on the car float as it entered the stream, heading toward the upper corner of the slip, and that, when she saw collision was imminent, she blew a signal of two whistles, which invited a passage starboard to starboard. Judge Hazel found that this second signal of two blasts was blown, notwithstanding that the master of the Bridgeton denied it, and we see no reason for differing from him. It follows that the collision was due to the violation by the Bridgeton of the agreement reached as to the navigation to be pursued, and not because the Varina was coming down too near the line of the piers, or at too great a speed.

The decree is affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes