## THE EL VALLE.

### Petition of SOUTHERN PAC. CO.

Circuit Court of Appeals, Second Circuit. April 9, 1928.

No. 170.

1. Collision ⇐16—Master of vessel is bound to know its character and how she would turn in ordinary conditions of wind and tide.

The master of a vessel is bound to know the character of his vessel and how she would turn in the ordinary conditions of wind and tide.

2. Collision ⇐95(4)—Steamship signaling starboard passage, and suddenly abandoning plan and backing full speed astern, held solely at fault for collision with tug.

Steamship which, while making turn on emerging from pier in Hudson river, signaled to towing tug for starboard passage, but thereafter stopped engines and backed full speed astern, thus abandoning signal, held, solely at fault for collision with tug.

Appeal from the District Court of the United States for the Eastern District of New York.

In the matter of the petition of the Southern Pacific Company, as owner of the steamship El Valle for limitation of liability. From a decree holding the steamship El Valle solely at fault for damages growing out of collision, the Southern Pacific Company, as claimant of the steamship El Valle, appeals. Affirmed.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (William J. Martin and Edward E. Elder, both of New York City, of counsel), for appellee Cahill Towing Co., Inc.

Barry, Wainwright, Thacher & Symmers, of New York City (Earle Farwell, of New York City, of counsel), for appellee Columbia Dredging Corporation.

William Butler, of New York City (George F. Hickey, of New York City, of counsel), for Delia Halligan, as administratrix, Harry Schweigel and Edward O. Bank.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. On the afternoon of January 15, 1924, at 3:37 p. m., the single screw steamship El Valle left her berth at pier 48 on the New York side of the Hudson river. She proceeded out at half speed and on emerging from the pier put her helm hard astarboard in order to make her turn and proceed down the river and out to sea. When she had cleared the dock, she stopped her engines, at 3:40, to let a north-bound tow consisting of a tug and covered barge which was on her port side and going up the river pass ahead of her. At 3:41, the El Valle went full speed ahead for one minute with her helm still hard astarboard. A Delaware, Lackawanna & Western ferryboat bore about five points on her port bow and crossed in front of her on one of its regular trips from Christopher street to Hoboken. When the ferry had crossed the steamer's bow, the latter saw the tug Princess towing a barge on her port side, and proceeding up the river, about 1,000 feet from the New Jersey shore and heading slightly toward the New York side. The El Valle blew two whistles which were answered by two from the Princess, meaning that the vessels would pass starboard to starboard. The Princess was then about 1,-400 feet away and from about a point and a half to two points on the bow of the El Valle. The Princess had slowed down on account of the same ferryboat which had already passed in front of the steamer and had also to cross the bows of the Princess. Shortly after the El Valle had blown the two whistles she saw that it was doubtful whether she could make her swing so as to pass the Princess starboard to starboard, so that at 3:42 she stopped her engines and at 3:43 backed full speed astern with her right-hand single screw. This threw her bow to starboard and into the starboard quarter of the Princess which immediately sunk. The collision resulted also in the loss of life of one of the crew of the El Valle, injuries to others, and damage to the scow which the Princess had in tow.

While the engines of the El Valle were stopped, after signaling to the Princess, the master of the El Valle heard two whistles from the General W. C. Gorgas and observed her proceeding down stream. She answered with two whistles and the Gorgas passed to the stern of the El Valle, having a clearance of only about 75 feet. The first officer of the El Valle said that the latter did not stop her engines until a little better than half a minute after he saw the Princess

and that he saw the Princess before any whistles were blown to the Gorgas.

Four principal excuses are offered by the El Valle for the collision:

(1) That because of the flood tide and the southwest wind she could not make her turn as she expected.

(2) That the Princess was hidden from view by the covered barge and the Delaware, Lackawanna & Western ferryboat so that the El Valle had no proper chance to make her turn.

(3) That she was impeded by the Gorgas which was so directly in front of her that she could not stop to let the Princess pass up the river but must go on to allow the Gorgas to pass under her stern.

(4) That the Princess was at fault because she failed to co-operate with her by hard astarboarding her helm and thus keeping out of her way.

[1, 2] The first two excuses are untenable. The master of the El Valle was bound to know the character of his vessel and how she would turn in ordinary conditions of wind and tide such as certainly existed on that day. The Standard (D. C.) 23 F. 207. If she had not power enough to swing around into her course down the river without describing such an extraordinary curve that other vessels could not anticipate it she should have stopped and proceeded more prudently. Her bridge, 30 or 35 feet above the water line, made it quite unlikely that she was unable to see objects beyond the tug and covered barge which passed in front of the steamer. Perhaps the ferry when it was passing in front of the low tug hid her for a moment, as the master of the steamer said it did, but Jorgensen, her first officer, contradicted this. If the El Valle could not see the Princess because these vessels shut her off, she should not have started full speed ahead as soon as the tug and barge passed her and, if she did see the Princess all the time and there was doubt about her ability safely to get by her, she should not have attempted such a maneuver. Having given the signal for a starboard passage, which was acceded to, she should have been able to carry out her plan and should have carried it out without deviation. She saw the Princess only 1,400 to 1,500 feet off and signaled for a starboard passage at a time when she was running full speed ahead herself and must have noticed that the Princess, slowed down by the passage of the ferryboat, would be unable to change her course to starboard for some time. So when she gave the signal her best chance was not to abandon it, but to carry it out.

We think the District Court was right in finding that she would have passed the Princess safely if she had kept to her original plan and that was the opinion of the master of the Gorgas, who seems to have been a disinterested witness. If she had kept her speed, she would have swung farther and farther to port instead of backing at the last moment and swinging to starboard right into the Princess. As it was, she almost cleared the tug. (Fol. 481.) But even if that was not so, the El Valle was in fault for getting herself into such a predicament. The master of the El Valle admitted that if he had known the Princess was there he would not have gone full speed ahead. His ignorance of her presence was undoubtedly also his reason for acceding to the signal of the Gorgas. He did not even notice the Gorgas until she blew and had he known that he was to pass between her and the Princess he should, and doubtless would, have stopped and let the Gorgas pass in front of the El Valle and also would have allowed the Princess to pass up the river before making his turn. As it was, he had, according to his testimony, signaled the Princess without ever having seen the Gorgas. (Fol. 2.) If a proper lookout had been kept he would have seen the Gorgas in time to wait for her to pass. On the other hand, if the inferences which may be drawn from the testimony of Jorgensen be accepted, and the Gorgas signaled earlier, there was not only the duty but the opportunity to require her to pass in front of the El Valle.

The truth is that the master of the Gorgas, as well as the masters of the El Valle and Princess, all supposed that the El Valle could make her turn successfully, and her failure to do so was doubtless because of the fact that she abandoned her plan at the last moment without justification. Undoubtedly the fact that she stopped her engines to allow the tug and covered barge to cross her bows and then had to start up again greatly increased her difficulties and lengthened and flattened the curve of her turn.

As for the alleged failure of the Princess to put her helm hard astarboard soon enough, there is some room for difference of opinion. Her master said he did not do this because she had so little headway after slowing down for the ferryboat that with a hard astarboard helm before she had more headway she would have turned around in the wind and tide and he would have lost control. In the short

time that remained within which the El Valle could have traversed the 1,400 to 1,500 feet between her and the Princess, the latter could have changed her course but little in any event, for she would have had to go several lengths even if her movements were not deflected by wind and tide in order to change her course. The Hallgrim (C. C. A.) 20 F. (2d) 720. Her prime duty after receiving the El Valle's signal was to get out of the latter's turning circle. The further north she could get the less to the west she need be to avoid it. She could probably go ahead under a starboard wheel with more speed and certainty than under a hard astarboard wheel when she had scarcely any headway and there was considerable wind and tide. We cannot say her master did not exercise fair judgment in the circumstances.

We hold that the fault of the El Valle is clear and that the Princess was without fault. There is no reason for reiterating the rule of The Servia, 149 U. S. 144, 13 S. Ct. 817, 37 L. Ed. 681, that this was a case of special circumstances, nor the further rule that a vessel who has initiated a passing agreement which has been accepted is at fault for deviating from the course proposed by her signal. The Bridgeton (C. C. A.) 233 F. 750; The Nutmeg State (C. C. A.) 67 F. 556. The decisions in The Cedric (1924) A. M. C. 749, and La Lorraine (C. C. A.) 12 F.(2d) 436, are entirely in accord with our disposition of this case. There is no doubt that the El Valle had a right to come out reasonably into the river to make her turn, but she had no right to initiate a maneuver which she could not execute, or to abandon it, if it was capable of fulfillment.

We do not pass on the right of the trial court to require the petitioner to pay the fees of the commissioner and stenographer, for now it is certainly liable for both, so that the question is moot.

The decree is affirmed.